INGRAM DAY LUMBER CO. v. KOLA LUMBER CO.

[84 South. 693, In Banc. No. 21129.]

WAR.  *Circumstances in evidence held not to excuse performance of a contract to manufacture and deliver lumber.*

Plaintiff sued for the nonperformance of a valid contract in writing whereby the defendant agreed to manufacture and deliver lumber of certain agreed sizes and dimensions within a stipulated time.  The defendant pleaded impossibility of performance on the ground that in time of war the United States Shipping Board Emergency Fleet Corporation served written notice upon the defendant to place at the disposal of said corporation all lumber and timber of certain dimensions,· including a material portion of the sizes covered by the contract sued on, and to refrain from selling or disposing of such lumber unless authority was first obtained from the said Emergency Fleet Corporation or the priority committee of the War Industries Board.  The defendant did not apply for a permit or authority to comply with its contract either from the United States Shipping Board Emergency Fleet Corporation or the priority. committee of the War Industries Board.

*Held,* under the circumstances in evidence, that performance of the contract sued on was not excused.

APPEAL from the circuit court of Covington county.
HON. W. H. HUGHES, Judge.

Suit by the Ingram Day Lumber Company against the Kola Lumber Company.  Judgment for defendant on a directed verdict, and plaintiff appeals.  Reversed, and judgment entered for plaintiff.

*M. S. Conner* and *White & Ford,* for appellant.

We will now consider the law pleaded by appellee as an excuse for non-performance.  See Act June 15, 1917, section 3115, 1/16 D. U. S., Complied Statutes, temporary supplement, 1917, chapter 29.  From this act it will be noticed that Congress does not itself attempt to impair

the obligation of contracts, or to delegate to the president the right to do so, nor is the President authorized to delegate to the shipping board, and then that board to the Emergency Fleet Corporation, an entirely different and distinct body, the right to impair contracts.

The appellee pleads a proclamation by the President, but the act nowhere says the President can issue a proclamation appointing someone else to do the act which the act specifically empowers only the president to do. This act is an appropriation bill and authorizes the President himself, provided he does not spend more than the amount appropriated, to require the owner of a plant in which ship materials are built or produced, to place at the disposal of the United States the output of such plant, but nothing need be done by such procedure for the government until he is given an order, and then "such order shall take precedence over all others," and contracts placed with such person. The act means nothing more than that orders of the Government are to have the perference.

Then the President sought to dedicate to the shipping board such powers as he had under the act and the shipping board sought to pass the matter on to the Fleet Corporation. Record pages 14-15. Then the general manager of the Fleet Corporation, on September 19, 1917, wrote to appellee "place at the disposal of the United States Shipping Board Emergency Fleet Corporation all long leaf yellow pine lumber produced by you of sizes 12x-12 or longer, by 24 feet long, or longer, or any sizes thirty feet or longer, and deliver the same or parts thereof, in such quantities and at such times and to such persons as may be specified in orders hereinafter to be given you and that you do not sell or dispose of said lumber or any part thereof, unless you first obtain authority from the United States Shipping Board Emergency Fleet Corporation, or the priority committee of the War Indus-

tries Board." Until appellee got this order, it did not have to do anything in the matter of making no further sales, and this order is the excuse appellee relies on, so therefore the very thing he relies on for failure to perform the contract gave him an opportunity to perform the contract by simply asking permission from the Fleet Corporation or the War Industries Board. This it did not do.

The order does not say "do not fill any existing orders, and no one should contend any stagnation of trade and business resulted which would have resulted had a construction been placed on the order for which appellee contends. We do not deem it necessary to go into the validity of the order of the Fleet Corporation. Congress seemed unduly alarmed and treated any shortage or necessity as an urgent deficiency and anything unusual was called an emergency and all this time the enemy was more than three thousand miles away and no invasion was either apparent or possible, especially after our army got to France. Therefore, we say at least this unusual legislation was untimely. See *Dantzler Lumber Co. v. T. & P. R. R. et al.*, 119 Miss. 343; *Ex Parte Milligan*, 18 Law Ed. (N. S.) 281.

The Dantzler case above quoted dealt with an order made by a representative of the President under one of his proclamations and was along the same line as the order in this case. The Dantzler case was a pioneer case on the question and our court was called upon to take a stand, which it rightly did. The correctness of this stand is shown by the fact that all courts, state and Feneral, have followed both in letter and in spirit the ruling of the Dantzler case. On the question of the validity of the order in this case, we refer to *Muir v. L. & N. R. R.* 247 Fed. 888, recently decided, where it was held that the proclamations and orders of the president do not have the force and effect of law, and cannot take away any vested rights. In the case at bar, just as in the Muir case, the

act did not authorize him to issue any proclamation or delegate his authority; see, also, *Moore* v. *R. R.,* 174, N. L. Supp. 60; *Lavalle* v. *R. R.,* 172 N. W. (Minn.) 918. Appellee, however, went on shipping the sizes mentioned in the order, or letter of the Fleet Corporation to people other than the Fleet Corporation, after receiving the letter, but overlooked filing appellant's order.

It is here well to note that the contract between the parties to this suit called for long leaf yellow pine, or rosemary pine, record page 4, and, although the order from the Fleet Corporation only related to long leaf, still appellant's order was not even filled with rosemary.

Appellee only contends that the contract became impossible of performance. Aside from the fact that the record shows it was entirely possible of performance, we beg to say that we could admit for the sake of argument, it became impossible of performance, and then no defense would be made out to an unconditional promise to perform. Impossibility of performance and hardship constitutes no defense, because the answer is, the parties could have guarded against the same by a proper stipulation. *Paggio* v. *Somerville,* 119 Miss. 6; *Oaradine* v. *Jane,* Aleyn 26, 82 Eng. Reprint 897; *Jemison* v. *McDonald,* 25 Miss. 83; *Harmon* v. *Fleming,* 25 Miss. 135; *Abby* v. *Billups,* 35 Miss. 618, 72 Am. Dec. 143; *Mitchel* v. *Hancock, County,* 91 Miss. 414, 45 So. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. Rep. 706; Anson on Contracts (2 Am. Ed.), 424; Harmon on Contracts, 824; 3 Elliott on Contracts, sec. 1891; 13 C. J. 639; 6 R. C. L. 997; Note L. R. A. 1916F. 10; *Furness* v. *Muller,* (D. C.) 232 Fed. 186; *Graves* v. *Miami S. S. Co.,* 29 Misc. Rep. 645, 61 N. Y. Supp. 115; *Elsey* v. *Stamps,* 10 Lea (Tenn.), 709; *Foster's Agency* v. *Romaine,* 32 T. L. R. 331; *The Harriman,* 9 Wall 161; 19 L. Ed. 629.

So we say that this is a case where appellant was entitled to judgment on the pleadings alone, but as it is, the alleged defense pleaded by appellee was not even at-

tempted to be proven. It is almost a condition precedent to appellant's right to even plead the letter from the Fleet Corporation to show an effort to get a permit and authority to fill our contract, and its inability to get the permit. Appellee says in his plea ''we made every legitimate effort to get a permit,'' thereby recognizing the necessity of pleading it, and then did not even ask their own witnesses or any other witnesses a single question about any effort to get a permit, but left that to come out on cross-examination. Therefore, when he claims under an instrument, he must bring himself within its terms. *Perkins* v. *Milling Co.,* 88 Miss. 804.

There are at least two more, and possibly three, Mississippi cases to the same effect as the Perkins Case. It is apparent, however, that the letter of the Fleet Corporation can have no effect upon this case. It was the duty of appellee to obtain the timber elsewhere, if it had been unable to produce it itself. The contract does not require appellee itself to produce the timber and lumber. Counsel are here asking the court to substitute uncertainty for certainty in the law of contracts, and to leave contracting parties in a state where they never know what their rights or liabilities are under the contract.

It is therefore, respectfully submitted that the action of the lower court in denying appellant's peremptory instruction and in granting appellee one, was error. As there is no conflict in the facts but only a question of law is involved, the case should be reversed and judgment entered here for appellant.

*D. M. McIntosh,* for appellee.

The trial court instructed peremptorily for the defendant (appellee) here, because when all the evidenre was before it, the court was of the opinion (1) that the order of the U. S. Shipping Board Emergency Fleet Corpora-

tion dated Washington, September 19, 1917, R. P. 16, was issued by or under the authority of the Government and was legal and binding on the appellee.  (2)  It being a matter of common knowledge that no private citizen could purchase lumber for private use at any of the saw mill plants without filing a request with the government showing an urgent need for it and obtaining a permit therefor, the court was of the opinion that appellee did all that was required of it in the way of obtaining a permit to ship the lumber when in its letter of November 6, 1917, it wrote to appellant seeking the necessary information upon which to base a request for the permit.

The court had before it the case of *Piagio* v. *Summerville,* 81 So. 343 and was of the opinion and so ruled that the case at bar fell within the excepted class of cases referred to in the able opinion by Chief Justice SMITH wherein he specifically noted that "certain class of events occurring which are said to excuse from performance because they are not within the contract." L. R. 42B, 185, 15 Eng. Ruling Cases 799.

The court was of the opinion that appellee could not be said to have accepted specifically or promised deliberately to deliver timbers called for by the contract regardless of whether or not the timbers should be subsequently commandeered by the Government.

Appellee was excused from filling the order with rosemary pine because from the evidence it was shown: (1) That this class of timber was not of sufficient density to conform to the specifications of the order; (2) because from the evidence it was shown the entire time of appellee was consumed in filling orders for the government as per the executive order of Admiral Capps of the Fleet Corporation.

The wide divergence of opinion as to the real verities of this case seems to arise solely out of the different conclusions drawn by the litigants from events as they were occurring at the time.

STEVENS, J., delivered the opinion of the court.

Appellant sued to recover five hundred seventeen dollars and sixty-three cents as loss of profits or damages sustained for the breach of a certain contract in writing, by the terms of which appellee agreed to manufacture and deliver to appellant one hundred and fifteen thousand feet of lumber of stated dimensions within from sixty to ninety days from April 27, 1917. The written order evidencing the contract stated that the lumber was for export, and appellant averred, and offered testimony tending to prove, that it had resold the lumber at a net profit of four dollars and fifty cents per thousand feet, which profit appellant would have made had the lumber been delivered. The lumber was never delivered, and this suit was instituted in this circuit court of Covington county for the consequent damage and interest. Both the parties are corporations engaged in the manufacture and sale of lumber and timber.

Appellee, as defendant, interposed the plea of the general issue and a special plea, in which it is averred: That the plaintiff ought not to recover because, under the act of Congress entitled "An act making appropriations to supply urgent deficiencies in appropriations for the military and naval establishments on account of war expenses for the fiscal year ending June 30, 1917, and for other purposes," which act became a law June 30, 1917 (chapter 29, 40 Stat. 182), the President of the United States, July 11, 1917, issued an executive order delegating and vesting in the United States Shipping Board Emergency Fleet Corporation all power and authority which by said law had been vested in the President in so far as applicable to and in furtherance of the construction of vessels, the purchase or requisitioning of vessels in process of construction, whether on the ways or already launched, or for the contract and construction of such vessels and the completion thereof, and all powers and

authority applicable thereto, and in furtherance of the production and requisitioning of materials for ship construction. That the United States Shipping Board Emergency Fleet Corporation on September 19, 1917, wrote a letter to appellee requiring it to place at the disposal of said corporation all long leaf yellow pine lumber purchased by appellee of certain sizes and dimensions, and forbidding appellee to sell or dispose of any lumber of the sizes mentioned without authority of the said corporation or the priority committee of the War Industries Board, and that, on account of said law, the executive order thereunder, and demand of the United States Shipping Board Emergency Fleet Corporation, the defendant was unable to manufacture and deliver to the plaintiff the lumber which it had agreed to deliver. The letter from the Emergency Fleet Corporation was filed as an exhibit to the plea and reads as follows:

"United States Shipping Board Emergency Fleet Corporation.

Washington, D. C., Sept. 19, 1917.

"Kola Lumber Co., Kola, Miss.—Gentlemen: By authority vested in the President of the United States by Congress in an act entitled 'An act making appropriations to supply urgent deficiencies in appropriations for the military and naval establishments on account of war expenses for the fiscal year ending June 30, 1917, and for other purposes,' which act became a law on June 30, 1917, and by authority delegated to the United States Shipping Board Emergency Fleet Corporation by executive order of the president in his proclamation dated the 11th day of July, 1917, copy of which is hereto attached, I hereby require and order:

"That you place at the disposal of the United States Shipping Board Emergency Fleet Corporation all long leaf yellow pine lumber produced by you of sizes 12 inches X 12 inches or larger X 24 feet long or longer,

or any sizes thirty feet or longer, and deliver the same, or parts thereof, in such quantities and at such times and to such persons as may be specified in orders hereafter to be given you, and that you do not sell or dispose of said lumber or any part thereof unless you first obtain authority from the United States Shipping Board Emergency Fleet Corporation or the priority committee of the War Industries Board.

"An immediate acknowledgment of the receipt of this letter is requested.

"Yours very truly,

"[Signed]                    W. L. CAPPS, Gen. Mgr."

It appears from the written contract that only a part of the lumber contracted for is of the sizes mentioned by the Emergency Fleet Corporation in its said letter, but the position of appellee in the trial was, and now is, that because of its inability to deliver a material portion of the lumber it could not fill the entire contract and did not undertake so to do. To the special plea appellant, filed a replication, setting up, among other things:

"That defendant did not use legitimate and proper means in its power to secure a permit to ship plaintiff's lumber, and was not unable to secure the same, and was not compelled by sovereign power to manufacture and ship all of such lumber under the direction of government authorities," etc.

It is also averred in the replication that the defendant had ample time to fill the plaintiff's order before any request or demand was made by the government or the government's agency.

Upon the trial of the case evidence was introduced by both partis. A peremptory instruction was asked by both the plaintiff and the defendant. The motion of the defendant, appellee here, for a peremptory instruction was sustained, and from the judgment rendered in pursuance thereof appellant appeals.

There are two main contentions on this appeal: First, that under the testimony appellee made no effort to secure a permit from the Emergency Fleet Corporation, or any one in authority, to fill plaintiff's order; second, that neither the President by his executive order, nor the United States Shipping Board Emergency Fleet Corporation by its written demand, intended to interfere with any valid contracts entered into in good faith between the appellee corporation and other individuals or corporations, and that performance of a contract was not made impossible by law or the happening of something which was unforeseen and which has entirely changed the position of the parties; the contention being that the written order or demand of the Fleet Corporation did not in terms forbid the filling of existing orders or contemplate the cessation of all lumber dealings and the stagnation of the lumber trade as between private individuals. The record shows that no application was made by appellee to the Emergency Fleet Corporation or any government agent for permission or authority to fill the order in question.

It may be conceded that appellee received many government orders for lumber of the sizes contemplated by the contract involved in the present suit, and that performance of the contract sued on may have been rendered difficult by the exigencies of war. But the legal excuse pleaded was not sufficiently established by the testimony.

It is in evidence that the contract between the parties was entered into July 27, 1917 after Congress had invested the President with the powers set out in in the special plea, and the appellee did not advise the Emergency Fleet Corporation of the existence of the contract, or make application for permission to comply with it. In the letter to appellant under date of November 6, 1917, appellee stated:

INGRAM DAY LBR. Co. *v.* KOLA LBR. Co. [Sup. Ct.

Opinion of the Court.                    [122 Miss.

"We have been given more business from the govern-
ment in the way of timbers than we had anticipated and
are instructed that this be given preference over every-
thing else. If it should happen that your timbers are
for the government and you can supply us with govern-
ment order number this will help very much."

There was certain other correspondence, but in no
instance did appellant waive its rights, but, on the con-
trary, insisted upon performance and gave notice of
damage in event the contract was not performed. It will
be observed that the letter from the general manager
of the Fleet Corporation of date September 19, 1917,
forbade appellee from selling or disposing of any lum-
ber of the grades and dimensions specified, "unless you
first obtain authority from the United States Shipping
Board Emergency Fleet Corporation 'or the priority
committee of the War Industries Board." By this lan-
guage it may be reasonably inferred that the authority
of the Fleet Corporation to fill existing contracts would
have been given in all proper cases. It is in evidence
that appellee's mill had a capacity of about sixty thousand
feet a day, and the record does not show exactly what
lumber appellee cut during the time or the sum total of
the government orders filled.

We conclude that on the testimony appellee was re-
quired to manufacture and ship the lumber as agreed, or
excuse performance by showing a proper application for
permission and a refusal by the Emergency Fleet Cor-
poration to permit the manufacture and shipment, or at
least the shipment of a material portion of the lumber
agree upon. There was no law forbidding appellee to
operate its sawmill or to manufacture lumber. It was
not unlawful for the parties to enter into the contract sued
upon. Our view renders it unnecessary to construe the
powers of the President under the Act of Congress
relied upon, or to determine whether the Emergency

Fleet Corporation, as a government agency, had the power to forbid appellee to perform a contract otherwise, valid and binding.

It is conceded by the parties that this is a proper case for a directed verdict one way or the other. We are of the opinion that appellant as plaintiff in the action was entitled to the peremptory charge. The judgment appealed from will accordingly be reversed, and judgment entered here for the amount sued for with interest.

Reversed, and judgment here for appellant.

*Reversed.*