GAGE & SPENCER *v.* ROAD IMPROVEMENT DISTRICT No. 3.

Opinion delivered July 2, 1923.

1. HIGHWAYS—CONCLUSIVENESS OF ENGINEER'S ESTIMATE.—Under a contract for building a road, which provided that the engineer's decisions. shall be final and conclusive, the road district is not bound by estimates made by the engineer based on reports of an employee resulting from fraud or gross mistake.

2. HIGHWAYS—FRAUD OR MISTAKE OF ENGINEER—JURY QUESTION.— Whether road contractors were overpaid through the engineer's fraud or gross mistake *held* for the jury.

3. APPEAL AND ERROR—MATTERS NOT ABSTRACTED—PRESUMPTION.— Where the pleadings, testimony and instructions in a case are not abstracted by appellants, it will be presumed that the issues were correctly submitted, and that there was testimony sustaining the verdict.

4. HIGHWAYS—OVERPAYMENT TO CONTRACTORS—LIABILITY OF SURETY. —The surety on a road contractors' bond, binding it to indemnify the improvement district against loss from their negligence in prosecuting the work and failing to pay bills or to complete the work within the time specified, is not liable for money overpaid the contractors through the fraud or gross mistake of the engineer.

Appeal from Newton Circuit Court; *J. M. Shinn,* Judge; reversed in part.

*George J. Crump* and *N. B. Maxey,* for appellants.

The contract provides that the estimates. made by the engineers are to be conclusive, and is binding on both parties. No fraud is charged against the engineer in charge of the work, nor that he allowed more than the work was worth. Case is controlled by 83 Ark. 140, which is directly in point; 88 Ark. 213. Appellants were entitled to recover the amount of the final estimates. Even though appellee be held entitled to recover against the contractors, it can not recover against the surety bond. The judgment against Gage & Spencer should be reversed and judgment given for the engineer's final estimate, and in any event the judgment against the surety must be reversed and the cause dismissed as to it.

*E. G. Mitchell,* for appellee.

The appellee was not bound to the payment of the estimates of the engineer, notwithstanding the provision of the contract to that effect, because of the proof of fraud and bad faith on the part of the engineers. 48 Ark. 522; 68 Ark. 185; 79 Ark. 505; 88 Ark. 213.

WOOD, J.   Gage & Spencer, a partnership (hereafter called appellants) were contractors. They were nonresidents. They entered into a contract with Road Improvement District No. 3 of Newton County, Arkansas (hereafter called appellee), to do work on its road. Appellants instituted this action against the appellee for damages and for failure to pay for work done under the contract. The appellee filed a motion to require appellants to make bond for costs, and also a cross-complaint setting up the particulars in which it alleged that the appellants had violated their contract, and made the National Surety Company (hereafter called surety company) a defendant. Appellee alleged that the surety company was on appellants' bond for the faithful performance of their contract. The surety company, through its attorneys, entered its appearance. The appellants failed to file their bond, and their cause of action was dismissed. Sec. 1845, Crawford & Moses' Digest. It was alleged in the cross-complaint that the appellee had been damaged by failure of appellants to perform their contract in certain particulars, which are specified, in the sum of $2,999.99, for which it prayed judgment against the appellants and the surety company.

The appellants and the surety company, in their answer to the cross-complaint, denied all the allegations of the cross-complaint, and denied liability. The cause was submitted upon these issues and the testimony adduced at the trial, and the jury returned a verdict in favor of the appellee against the appellants for the amount prayed in the cross-complaint, and against the surety company in the sum of $1,778.77, from which judgment the appellants and the surety company appeal.

The contract between the appellants and the appellee was introduced in evidence. It provided that the appellants should build a road for the appellee according to the plans and specifications, which were made a part of the contract, and the appellee was to pay for the work at the prices stipulated. The appellants were to begin work under the contract on the 21st of June and to complete the work within 156 working days after they began. If they failed to complete the work in the time specified they were to pay $15 each day delayed, which sum was to be liquidated damages and deducted from the final amount due the appellants under the contract. The bond bound the surety company, in case of the failure of appellants to perform their contract, to indemnify and save harmless the appellee against any loss or damage of whatever kind and character, arising or occasioned by deed of negligence of the appellants, their agents, servants and employees, in the prosecution of the work, or by reason of improper safeguards or incomplete protection to the work, or by reason of failure to pay all bills for material and labor which entered into the construction of the work or used in the course of the performance of the work, and by reason of a failure to complete the work within the time specified.

The specifications, made a part of the contract, contained the following provisions: "The engineer shall have full supervision over the entire work, and his decision as to quality of material, construction and rate of progress of said work and the meaning of all drawings and specifications shall be final and conclusive. He shall determine the amount and quantity of work of the several kinds performed, materials furnished which are to be paid for under the contract. In case any question shall arise (his decision) shall be a condition precedent to the right of the contractor to receive any money due under the contract. All orders and instructions to the contractor shall be given by the engineer." And the further provision that "the final estimate of the

engineer should take the place of all prior certificates or estimates upon which payments had been made.'' The final estimate of the engineer showed that the district was indebted to the appellants in the total sum of $20,821.37, less previous estimates of $17,637.49, leaving a balance due appellants of $3,183.88.

The appellants, after setting forth the above as their abstract of the record, further state: ''Neither will we abstract the evidence in regard to the fraud and collusion charged and attempted to be proved. The only suspicious circumstance shown in that instance is that Stanley, the engineer in charge of the work, while he was engaged as such engineer, also was hired to the contractors to do certain work for them.''

The appellee has abstracted the testimony of R. D. Alexander. He testified that his company was a corporation, and was employed as engineer of the appellee to superintend the building of the road. He employed O. A. Stanley as local engineer to lay out the work according to the plans given him. Witness was never called on to make a final estimate under the contract with the appellants, but did of the road he worked. He had some sort of report from Stanley. He did not make an estimate from this report—checked them up, but they did not balance. There was a discrepancy, and then it was that Roberts and witness came and calculated it on the ground. They found matters that caused witness to come himself. In trying to verify, witness took numerous observations of the road, and it did not show that Stanley was making too large an allowance to Gage & Spencer under the contract. Witness found places where the road was not over eleven feet wide. The contract called for the road to be sixteen feet wide. Stanley had no right to make a final estimate. Witness' company did that. The defect in the road as left by the contractors was deficiency in ditches and points of narrow width that were not up to specifications. It had very little value—could have been constructed rea-

sonably for from $2,500 to $3,000 per mile. Witness was on the job while Gage & Spencer were at work on it very seldom—one time, possibly twice, not to exceed that. Witness thought that he was there only one time, and spent probably half a day. He had nothing but a tape-line. Witness did not find Stanley's work generally satisfactory. Stanley had no right to work for Gage & Spencer. Witness did not authorize it—would not have authorized him or any other man to do that.

Witness Cantrell testified that he was a graduate in engineering of the University of Arkansas; that the contractors had not removed the dirt and rock claimed, and under the contract they had been greatly overpaid.

W. M. Moore testified that he was one of the commissioners of the appellee; that the board had overpaid the appellants; that it had paid them $20,000, and they should have been paid for actual work performed under the contract $13,000.

Gage testified that before they quit Stanley was in their employ. He worked for us while he had employment from the other side. Witness took his orders from Stanley absolutely. Stanley did not take orders from witness.

Stanley testified that he acted as foreman in the employ of Gage & Spencer in their absence, and sometimes when they were present. He got $5 a day; his boy got $3 a day and board. Gage & Spencer fed witness' horse. His brother-in-law got thirty cents an hour, and they fed his horse. The appellee paid witness $125 a month and expenses when he was away from headquarters. Witness was to look after the construction of the road—to give appellee his time and ability. He had accepted employment from the appellee and had been working for the other fellow. Witness never told the commissioners of the district of his employment by Gage & Spencer. The inference of his language to Moore was that he was not in the employ of Gage & Spencer and would not stand under that accusation.

Spencer testified that Stanley got an automobile from him. If he said that he did not, he was a liar. That was a private transaction between Stanley and witness. Witness sold it to Stanley for cash.

In the cross-complaint filed by the appellee against the appellants it is, among other things, alleged: "They (appellants) conspired and entered corruptly a conspiracy with O. A. Stanley, then and there employed by R. D. Alexander Engineering Company, by which they undertook to and did claim that they had moved a large number of cubic yards of dirt and broken rock, and claimed the same to be solid rock. By this conspiracy and fraud they did succeed in securing from plaintiff in cross-complaint (appellee) vast sums of money, the amount of which is known to them and unknown to this plaintiff" (appellee), etc.

The appellants invoke the doctrine of our cases to the effect that, where the parties to a building contract agree that in disputes between them concerning the provisions of the contract or the performance thereof the decision of the engineer or of the architect shall be final and conclusive, the decision of the engineer or architect under such contract is binding upon the parties to it, and such decision cannot be challenged except upon proof of fraud, or such gross mistake as necessarily implies bad faith on the part of the engineer. *Carlile* v. *Corrigan,* 83 Ark. 140; *Boston Store* v. *Schleuter,* 88 Ark. 213. But the doctrine of these cases cannot avail the appellants, for the reason that they have not abstracted the pleadings, the testimony, or the instructions bearing upon the issue of fraud and gross mistake upon the part of the engineer. The appellants content themselves on this issue by saying: "We will not abstract the evidence in regard to the fraud and collusion charged and attempted to be proved." And again: "There is no allegation of fraud on the part of Alexander, the chief engineer, who made the final estimates in person. The only evidence of mistake is the testimony of other

engineers and witnesses that the work could have been done for less. This, as quoted above, is not sufficient to establish fraud or gross mistake.''

But the appellee, as we have seen, does charge that the appellants ''corruptly entered into a conspiracy with O. A. Stanley, then and there employed by R. D. Alex ander Engineering Company, by which they defrauded the appellee of vast sums of money,'' etc. And the appellee, in its abstract, sets forth some testimony tend- ing to prove that Stanley, the local engineer, was em- ployed by the R. D. Alexander Engineering Company, and that while so employed he also accepted employment from appellants; hence that, through his fraud or gross mistake, the appellee had paid out sums largely in ex- cess of what they should have paid under the contract. Any fraud or gross mistake of Stanley was the fraud or gross mistake of the chief engineer who employed him, and the appellee therefore was not bound by the estimate made by Stanley or the engineering company predicated upon any reports made by Stanley, that might have been the result of fraud or gross mistake on his part. The record as abstracted by the appellee is suffi- cient to show that there was, at least, an issue for the jury as to whether or not the appellants had been over- paid in the sum claimed by the appellee through the fraud or gross mistake of the engineering company, whose decision, under the contract, was made final and conclusive.

In the absence of any abstract of the testimony or the instructions upon that issue by the appellants, we must presume that the issue was correctly submitted by the trial court, and that there was testimony to sustain the verdict. The judgment therefore against the appel- lant must be affirmed.

But, as to the surety company, the case is different. It is only liable for a breach of the conditions of its bond. After a careful scrutiny of the provisions of the bond, we find that it does not bind the surety company

to refund to the appellee any money it may have over-paid to the appellants by reason of fraud or gross mistake of the engineer. It must be remembered that this is an action by the appellee against the appellants for money which the appellee alleges had been overpaid to the appellants through the fraud or gross mistake of the engineer. The bond contains no condition which, upon a breach thereof, would make the surety company liable to appellee for money it had overpaid appellants. The judgment therefore against the surety company is erroneous, and same will be reversed, and the cause dismissed as to it. As to the appellants, the judgment is affirmed.