R. T. CLARK & Co. *et al. v.* MILLER, STATE REVENUE AGENT.

(Division B. May 20, 1929.)

[122 So. 475. No. 27590.]

242

244

*Wm. M. Hall,* of Memphis, Tenn., and *Pollard & Hamner,* of Greenwood, for appellant.

252

*Engle & Laub* and *L. T. Kennedy,* all of Natchez, for appellant.

*Shands, Elmore & Causey,* of Cleveland, for appellee.

Argued orally by *Wm. M. Hall,* for appellant, and by
*A. W. Shands,* for appellee.

ANDERSON, J., delivered the opinion of the court.

(After stating the case as above.) It is true, as
contended by the revenue agent, that the positive re-
fusal to perform a contract is a breach of it, although
the time for performance has not arrived, The Law of
Public Contracts (Donnelly), section 304, p. 435; but the
mere assertion of a party to a contract *that he will be un-
able, or will refuse,* to perform his contract is not suffi-
cient to constitute a breach. There must be a distinct,
unequivocal, and absolute refusal to perform, treated and
acted upon as such by the other party to the contract.
A mere assertion of inability to go on with the contract
is not a repudiation of the contract. The intention to
abandon the contract at some future date is not a breach
of it unless such intention is declared in positive terms
and unconditionally. When it is so declared, the other

party has an opportunity to accept the declaration if he chooses to do so. Benjamin on Sales, section 568; *United States* v. *Smoot,* 15 Wall. 36, 21 L. Ed. 107; *Dingley* v. *Oler,* 117 U. S. 490, 6 S. Ct. 850, 29 L. R. A. 984; *Kilgore* v. *Baptist Educational Association,* 90 Tex. 139, 37 S. W. 598; The Law of Public Contracts (Donnelly), p. 438; 6 R. C. L., section 387, p. 1028; Elliott on Contracts, section 2032. Applying these principles to the facts as conclusively shown by the evidence, we think it clear that there was no breach of the contract by R. T. Clark & Co. The orders and resolutions of the levee board spread on their minutes, give the history of what occurred with reference to the alleged breach of the contract; and there is no other evidence in the case which contradicts such orders and resolutions in any material particular.

The negotiations between the contractors and the levee board, bearing on the question, cover a period of something like two or three months of the first part of the year 1918, and, while they were going on, the contractors were proceeding with the work under their contract—never stopping, nor expressing any intention of abandoning the work, unless, and until, they were overtaken by bankruptcy. On the contrary, they gave the levee board to understand that they would continue the work as long as their creditors would permit them, although it was thoroughly understood by both parties that, if the prevailing prices of labor and materials going into the work, brought about by the World War, continued, bankruptcy would ensue. There is no other reasonable interpretation that can be put upon the orders and resolutions of the levee board, taken in connection with the other evidence in the case, than that the increase of fifty per cent. in the contract price was granted by the levee board in order to insure against the contractors' abandoning their contract at some future time. The increase, therefore, was not in recognition or acceptance of a breach of the con-

tract that had already taken place. The fight made by both parties, from the beginning to the end of the negotiations, was to bring about conditions that would prevent a breach of the contract. There is nothing whatever in the resolutions and orders of the levee board to bear out the theory that R. T. Clark & Co. had breached their contract. The correspondence between the levee board and the attorney-general and the levee board and its attorneys shows conclusively, we think, that there was no thought in the minds of any of the parties concerned that R. T. Clark & Co. had abandoned and breached the contract.

The record shows that the unfinished levee work was emergency work—necessary to be completed without delay in order to prevent disastrous floods from the Mississippi river. It is true that R. T. Clark & Co. were perfectly willing to abandon the contract if agreeable to the levee board, but the levee board was not willing for them to do so. Conditions were such that if the contract had been breached and the Guaranty Company had paid the levee board the full penalty of its bond, one hundred sixty thousand dollars, the levee board had no assurance that the contract for the work could be relet at the original price plus one hundred sixty thousand dollars, the proceeds of the bond. On the contrary, judging from the evidence in this record, the indications were that a reletting of the contract would have resulted in an increase of more than fifty per cent. of the original contract price. In other words, viewing the situation as it existed at the time, it appeared to the levee board that the best interest of the district required that R. T. Clark & Co. carry out their contract instead of breaching it, and to that end they seem not to have left anything undone.

The facts and circumstances relied on by the revenue agent as constituting a reletting of the contract do not show a reletting, but instead a method adopted which the

levee board conceived would legalize an increase in the contract price. We think no other reasonable interpretation can be placed on what occurred. It is true that bidders were present, but no bids were made. R. T. Clark & Co. were represented but put in no bid, it being understood that they were to go on with the work and receive a fifty per cent. raise in the contract price, provided the alleged reletting developed that such increase was reasonable, which it abundantly did. No new contract was made with R. T. Clark & Co.; they merely agreed to carry out the old contract of November 1, 1916, at the increased price. There is nothing in the minutes of the levee board to show that there was a reletting of the work and a new contract. The contractors gave an additional bond of eighty thousand dollars to carry out the old contract—not a new contract. The guaranty bond then in force provided as a condition precedent to liability thereon, in the event of a breach of the contract, that the levee board give the Guaranty Company notice of such breach and afford it an opportunity itself to complete the contract. We are not deciding, under the particular facts of this case, that a failure to give such notice would defeat a recovery against the Guaranty Company, but we do think that the failure of the levee board to put anything on its minutes declaring that a breach of the contract had taken place and requiring notice thereof to be given to the Guaranty Company, in accordance with that stipulation in the bond, is most significant. The stipulation in the bond for notice was an important provision of the bond, to say the least.

There seems no escape from the conclusion that everything that was done by R. T. Clark & Co. and the levee board, relied on by the revenue agent as constituting a breach of the contract, and the reletting of the contract, was done by agreement between the parties. There is no such thing known to the law as the breach of a contract by agreement of the parties.

The revenue agent lays especial emphasis on parts of the testimony of the witnesses Clark, Harris, and Mangum, as showing a breach of the contract. Viewing the parts of their testimony relied on in the most favorable light to the revenue agent, it amounted to this: When the contract price for the work was increased by the levee board, R. T. Clark & Co. were practically bankrupt; they had only about ten thousand dollars in money left with which to prosecute the work. One of the witnesses testified that R. T. Clark & Co. had abandoned the contract; the other two testified that there was a reletting of the contract. But it is manifest that these witnesses in so testifying were merely drawing their own inferences from the proven facts about which there was no conflict in the evidence. In other words, they were merely giving their opinions as to what the proven facts meant. Such opinions do not change the proven facts; on the contrary, they must yield to them.

The revenue agent contends that there was a dissolution of the firm of R. T. Clark & Co., two of the members going out of the firm, and a reletting of the contract to a new firm with the same name but with different partners, and for those reasons the contract was breached. We do not think there is any merit in that contention. The evidence shows that one of the partners, Dulaney, had never entered upon the work, and, after the work began, another, Cheshire, dropped out, because his equipment necessary to do the levee work had been taken from him by his creditors. The other partners proceeded with the work without objection from the levee board, carrying on the work for and on behalf of the partnership. There was no dissolution of the partnership as between the partners. When one partner undertakes to perform a contract entered into by his partnership and later quits and turns the performance of the contract over to his copartner, the performance by the latter is on behalf of

both partners. *Excello Feed Milling Co.* v. *U. S. Fidelity & Guaranty Co.,* 145 Miss. 599, 111 So. 94; *Adams* v. *Haigler,* 123 Ga. 659, 51 S. E. 638; 20 R. C. L. p. 974, section 204; 30 Cyc., p. 659.

The result is that the amount paid R. T. Clark & Co. by the levee board above the contract price was simply an overpayment. The rule is that sureties on bonds for the performance of contracts are not liable for moneys improperly paid. *Edwards County* v. *Jennings* (Tex. Civ. App.), 33 S. W. 585; *Gage & Spencer* v. *Road Improvements Dist.,* 159 Ark. 642, 252 S. W. 922; *McGregor & Henger* v. *Escajeda* (Tex. Civ. App.), 216 S. W. 398.

R. T. Clark & Co. contend that the participation of the United States in the World War rendered the performance of the contract on their part legally impossible; that the exercise by the Federal government of its war powers under the Constitution made the contract impossible to perform, because of the drafting of their labor and the enormous increase in the costs of labor and materials necessary to carry on the levee work, and, therefore, the increase in price was justified and legal. The principle upon which this contention is based is that the war powers of the Federal government under the Constitution are paramount to all state authority, including the Constitution of the state. The contract in question was entered into November 1, 1916; the World War began August, 1914. For two years thereafter there were many aggressions by Germany against the sovereignty of the United States which indicated that the United States would become involved in the struggle. Among such indications was the enactment by Congress, on June 3, 1916, at the suggestion and with the approval of the President, of the National Defense Act. In August, 1916, the Council of National Defense and the War Industries Board were created, and many executive orders were promulgated by the President preparatory to war. There

was a proclamation by the President in which he took possession of, and assumed control of, the transportation systems of the country for the purposes of war. All of these matters will be taken judicial notice of by the courts, and knowledge thereof will be charged to persons affected thereby. In the face of this knowledge, R. T. Clark & Co. entered into the contract involved. At the time of the execution of the contract, business conditions created by the World War were such that contractors doing levee work will not be heard to complain. They will be chargeable with notice that what occurred might have been reasonably expected. The contract involved contained no stipulation excusing performance because of conditions brought about by the war; and now such a condition will not be implied by the courts. *London & Lancashire Indemnity Co.* v. *Board of Commissioners,* 107 Ohio St. 51, 140 N. E. 672; *Columbus Ry. Power & Light Co.* v. *City of Columbus* (D. C.), 253 F. 499; *Ingram-Day Lumber Co.* v. *Kola Lumber Co.,* 122 Miss. 632, 84 So. 693. It was held in the first case cited that in order to make available the defense of legal impossibility of the performance of a contract by reason of governmental interference in the control of production, labor, and transportation in the prosecution of the World War, it must be proven that there was either actual seizure or such direct intervention or governmental mandate as prevented further performance of the contract. The contractors made no such case here.

Under section 96 of the Constitution, R. T. Clark & Co. are liable to the levee board for the excess paid them above the contract price. *Clark* v. *Miller,* 142 Miss. 123, 105 So. 502. And this is true regardless of whether or not R. T. Clark & Co. had breached the contract. The levee board was without authority either to increase the contract price or to relet the contract to R. T. Clark & Co. at a price above the contract price.

The result is that the decree of the court below is reversed as to the United States Fidelity & Guaranty Company, for which judgment is rendered here, and affirmed as to R. T. Clark & Co.

*Reversed in part, and affirmed in part.*