434 So.2d 715 (1983)
Jack JOHNSTON
v.
Mrs. Mary Kathryn Ellis STINSON, et al.
No. 53730.
Supreme Court of Mississippi.
July 13, 1983.
*716 Forrest A. Johnson, Jr. and Johnson & Johnson, Natchez, for appellant.
John T. Green and Joseph S. Zuccaro, Natchez, for appellees.
EN BANC.
DAN M. LEE, Justice, for the Court:
Jack Johnston (Johnston) appeals from a final decree of the Chancery Court of Adams County allowing only nominal damages in action for the breach of an agricultural lease by the defendants, Mrs. Mary Kathryn Ellis Stinson, Glen Ellis Stinson, and Glen A. Stinson (Stinsons). Glen A. and Mary Kathryn Ellis Stinson are husband and wife; their son is Glen Ellis Stinson. We reverse.

FACTS
In 1977, the Stinsons owned several farms in Adams County, and that year they and Johnston reached an agreement whereby Johnston would lease a total of 600 acres on their farms for the purpose of growing and harvesting soybeans. This agreement was reduced to writing in a five-year lease, dated and executed December 27, 1977, and commencing January 1, 1978.
It was necessary for Johnston to obtain Farmers Home Administration financing, but this agency would not approve certain provisions in the first lease, and the Stinsons and Johnston entered into a second lease prepared and approved by the Farmers Home Administration. This second lease is also dated December 27, 1977, but was not executed until March 10, 1978, and its effective date likewise begins January 1, 1978.[1]
In early 1978 Mr. and Mrs. Stinson also agreed to sell Johnston their farm equipment. This culminated in a sale on March 10, 1978, of tractors, combines, disks, trucks, and numerous articles of farm equipment for a total cash consideration of $75,000, of which $10,000 was paid as a down payment, and the balance evidenced and secured by a promissory note and security agreement due and payable over a five-year period.
On July 23, 1979, the Stinsons wrote Johnston a letter with complaints about the equipment and the delinquency in interest due on the equipment note. This letter also complained of Johnston's failure to pay water and electric bills, to clean weeds around the fields and tenant houses, make proper fence repairs, and clean ditches and maintain clear roadways.
Some time in the autumn of 1979 the Stinsons repossessed the farm equipment.
On December 4, 1979, the Stinsons wrote Johnston a letter informing him that because of various delinquencies they were repossessing the equipment. In this letter the Stinsons also claimed Johnston had *717 breached the land lease agreement and set out twelve reasons supporting this contention. This letter closed with the following paragraph:
Therefore, the agricultural lease agreement entered into by you with the undersigned, effective January 1, 1978 for a five year term, is null, void and of no further effect.
Under the land lease Johnston was obligated to pay an annual rental of $20,000 on the 15th of November of each year of the lease. He paid the 1978 rental in November, 1978, and the 1979 rental in November, 1979, and was not delinquent in the payment of the cash rent due under the land lease.
In the meantime, the Stinsons entered into another five-year agricultural lease on January 8, 1980, with one Clyde Williamson.[2]
In February, 1980, Johnston filed a bill of complaint in the Chancery Court of Adams County in cause number 29,106 setting forth three causes of action against the Stinsons.
(1) Breach of the land lease, for which he claimed an annual loss of $67,000 based upon an average crop yield, less average crop loss and rental, or a total of $201,000;
(2) wrongful repossession and conversion of the farm equipment; and
(3) breach of another land lease entered into between Glen A. Stinson and Johnston.[3]
Johnston took a nonsuit to his chancery action, and on April 4, 1980, filed two separate causes of action against the Stinsons in the Circuit Court of Adams County. In cause number 4853 of that court he asserted his cause of action for the wrongful repossession and conversion of the farm equipment. In cause number 4854 the declaration involved breach of the land lease.
No motion was made to consolidate these causes. Instead, the Stinsons made a motion to require Johnston to elect in which cause he would proceed. The circuit judge entered an order to transfer cause number 4854 to chancery court where it became a chancery action, cause number 29,831. This is the case involved on this appeal.
Cause number 4853, dealing with the equipment repossession, proceeded to trial in the circuit court, resulting in a judgment in favor of Johnston. Upon appeal, we reversed and rendered judgment in favor of the Stinsons, holding the Stinsons had a right to repossess the equipment because Johnston had breached the security agreement in failing to carry adequate insurance. Johnston v. Stinson, 418 So.2d 805 (Miss. 1982).
The bill of complaint in the instant case does not charge any eviction by the Stinsons, or that Johnston had in any way been disturbed in his possession of the land. Rather, it charged that by the letter of December 4, 1979, the Stinsons had wrongfully "cancelled" the lease.
The bill then recites:
As a direct and proximate result of the illegal cancellation of the lease by the defendants in total disregard to the plaintiff's rights, the plaintiff suffered the loss of the use and benefit of said lease to grow soybeans for the remainder of the five (5) year period, or a total of three (3) years and twenty-seven (27) days.
The value of the loss of the remainder of said lease to the plaintiff was approximately sixty-seven thousand dollars ($67,000.00) per year based on an average crop yield, an average crop cost, and cash rent of the land, or a total of not less than two hundred one thousand dollars ($201,000.00).
The bill concluded with a prayer for money damages of $201,000 against the defendants, and attorney's fees.
*718 The chancery trial began April 21, 1981. At the beginning of the trial the chancellor had some questions as to how Johnston planned to proceed on damages, and the record reveals the following colloquy between the chancellor and Johnson's counsel:
BY THE COURT:
Let the record show that Mr. Johnston says that the only issue in this case is the fair market value of the lease for the balance of the term and that because that is the issue then the profits are not in issue. Isn't that right? The only thing we are dealing with is the fair market value of the lease. Isn't that what this lawsuit is about?
BY MR. FORREST JOHNSON:
Your Honor, if I understand the suit  I think Al understands it better than I do  if Johnston breached the lease, he ain't entitled to nothing; if Stinson terminated the lease, then he is entitled to a fair market value of the lease for the remaining three years.
BY THE COURT:
For the remaining period of the term, right.
BY MR. FORREST JOHNSON:
I think it's that simple, Your Honor ... less whatever he would have had to pay.
After further preliminaries, the record reveals the following development:
BY THE COURT:
Well, I understand there were to be some stipulations between you as to what would be at issue this morning, and I assume that those stipulations are now ready for the record. I just hadn't gotten into them yet when I asked if the complainant was ready, but 
BY MR. ZUCCARO:
Your Honor, I think if I may do a stipulation subject to Counsel's interruption ?
Counsel for the defendants then stated that the Stinsons as cross-complainants would not present proof on the counter-claim as to certain items furnished Johnston, and which had been adjudicated in the circuit court, but reserved all rights of the cross-complainants incorporated in their answer and cross-complaint. Counsel for the defendants then concluded with the following:
It is further stipulated between the parties Complainant and all Defendants that the Complainant, Mr. Jack Johnston, would proceed in this hearing not on loss of profits but in the difference between the fair market value of the lease for the three years between the Stinsons and whoever they may lease to or may have leased to or could have leased to, less and except the amount obligation by Mr. Jack Johnston as rental to be paid under the terms of his lease or leases.

Trial proceeded with Johnston putting on proof with reference to who had breached the land lease contract. The two contracts between the Stinsons and Johnston, as well as the Stinson land lease contract with Williamson, were introduced. No proof independent of the written instruments was offered as to the value of either contract.
The only issues before the chancery court were whether the Johnston lease was breached and if so the amount of damages flowing from the breach. The chancellor found as a fact that the lease was breached by the Stinsons and because the Stinsons have not cross-appealed from this finding such is not at issue before this Court. Therefore, the only issue on appeal is the correctness of the award of nominal damages for the Stinsons' breach of the lease.
In Pearl River Valley Water Supply District v. Wood, 252 Miss. 580, 172 So.2d 196 (1965), this Court addressed the effect of a stipulation which related to the measure of damages in an eminent domain proceeding:

This contractual stipulation was agreed upon, reduced to writing and with the approval of the circuit court was introduced in evidence of their contractual agreement which was and is binding on them. The appellant cannot now contend that March 19, 1959 is the day the project became a reality insofar as the taking of appellee's land and her due compensation therefor are concerned. The stipulation *719 fixes the effective date of the taking as June 1, 1964, and all rules of evidence pertaining to eminent domain proceedings in trials de novo shall be followed and based on this date, June 1, 1964.

The appellant is estopped to assert now that he should be permitted to exclude any enhancement in value to appellee's property due to the reservoir project, prior to June 1, 1964, the exact day which he agreed is the effective date of the taking. It follows, therefore, that whatever enhancement in the value of appellee's land had already accrued on or before June 1, 1964 was admissible for consideration by the jury... .
(252 Miss. at 594, 172 So.2d at 202)
... .
Therefore, if the appellant had not agreed and stipulated that June 1, 1964 was the date of the taking, a day almost two years subsequent to the date of the institution of the eminent domain suit on October 18, 1962, the latter date would have been constituted the day of this taking, but certainly not March 19, 1959, the date of the publication of the District's authorization and contemplated condemnation.
(252 Miss. at 596, 172 So.2d at 203)
See also, Penrod Drilling Co. v. Aubrey Wayne Bounds, 433 So.2d 916 (Miss. 1983).
The parties stipulated that the measure of Johnston's damages would be determined by the difference between the fair market value of the lease less the amount Johnston would have had to pay as rental under the terms of his lease. Pursuant to Woods, the parties are bound by their agreement. Furthermore, 83 C.J.S. Stipulations § 26(b) (1953) states in part:

Verdict. General rules as to the construction, operation, and effect of stipulations also apply with respect to stipulations concerning the verdict, such as a stipulation that the jury might separate after rendering a sealed verdict. A stipulation for a sealed verdict does not operate to dispense with the attendance of the jurors when it is opened and read in court or deprive the court of the right to have the jury polled. Also, a stipulation that should the jury agree that night, they might return a sealed verdict to the clerk and disperse, cannot be construed to extend to a verdict found on the next day.
Where the parties by stipulation agreed on the amount of the verdict in the event that plaintiff recover judgment, recovery is not erroneously allowed in the absence of proof of damages.
See also 83 C.J.S. Stipulation § 27 (1953) which states in part:
Accordingly, such rules apply with respect to stipulations concerning the amount of recovery or relief awarded.
Moreover, the measure of damages which was stipulated to was a proper method for computation of damages arising from the breach of a lease. Restatement (Second) of Property, § 10.2(b) (1977) explains this method;

Landlord's default and fair market value of lease. Since leases are not normally saleable items, there is no readily ascertainable market value for leases. A lease has a dollar value if it has built into it bargain features that are not obtainable if other similar property were leased at the time its value is being determined. The bargain feature most likely to be present that would give the lease a dollar value is the amount of the rent. This dollar value is its fair market value. If the tenant terminates the lease as a result of the landlord's default and is entitled to damages, he has lost the fair market value of his lease as of the date he terminates the lease. Even though the fair market value of the lease has been damaged by the default, he is not damaged by this fact unless he elects to terminate the lease, because if he continues the lease, other remedies available to him, such as rent abatement, tend to preserve the bargain feature of his original lease. If the leased premises are under rent control, the lease has no bargain feature except to the extent the rent payable is less than the maximum rent that can be *720 collected under the applicable rent control statute.
That if the property was leased for a special use other than the normal use of such property the lease would have a greater dollar value is not a relevant factor in determining the fair market value of the lease.
ILLUSTRATION:
1. L leases to T for ten years at a rental of $300 per month, the lease to begin one month later. L defaults by leasing the property to A, who prevents T from going into possession. T elects to terminate the lease and to sue for damages. A reasonable rental value of the property is appraised at $375 per month. It is determined that the fair market value of this lease is $6,321.60. This figure represents the difference between the rental value for the remainder of the term ($375 per month for ten years) and the agreed rental value ($300 per month for ten years) discounted to its present dollar value.
Johnston offered the best evidence of his damages by introducing into evidence his lease along with the Williamson lease. The Williamson lease, which provided for an annual rental of $32,500, was offered and admitted into evidence as proof of the fair market value of the lease for the remaining unexpired portion of Johnston's lease which was breached by the Stinsons. The Johnston lease provided for an annual cash rental of $20,000 therefore, the difference between the two leases established Johnston's damages for the three remaining years on his lease.
Much is said about the varying terms of the Williamson and Johnston leases. While the terms of the two leases did vary in some respects, the attractibility of the Williamson lease as opposed to the Johnston lease would only go to the mitigation or diminishment of the fair market value of the leases.
Because the varying terms of the two leases would go only to mitigation of Johnston's damages upon a breach of his lease, it was incumbent on the Stinsons to prove the facts which would operate to bring the mitigation into effect against Johnston. Mengel Co. v. Parker, 192 Miss. 634, 7 So.2d 521 (1942). Furthermore, the stipulation made by the attorney for appellees and agreed to by the appellant, provides for the difference between the two leases as being the measure of damages.
Based on the foregoing, we hold that the chancellor erred in finding that Johnston failed to prove his damages by competent evidence and with reasonable certainty. This cause is theretofore remanded to the chancery court for a new trial on the issue of damages suffered by Johnston because of the breach, consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, PRATHER and ROBERTSON, JJ., concur.
HAWKINS, J., dissents.
HAWKINS, Justice, dissenting:
I respectfully dissent.
I have no quarrel with the principles of law asserted by the majority, only with their application.
The factual statement needs to be supplemented.
Johnston's finances were marginal at best. In 1978 he had a bad crop year, and a loss in excess of $39,000 from his farming operations. He was granted a disaster loan from the Farmers Home Administration.
As stated in the majority opinion, on December 4, 1979, the Stinsons wrote Johnston a letter asserting detailed delinquencies on his part. This letter concluded as follows:
Therefore, the agricultural lease agreement entered into by you with the undersigned, effective January 1, 1978 for a five year term, is null, void and of no further effect.
Other than this letter the Stinsons took no steps to interfere with Johnston's possession of the land, and no action was taken to evict him, either actually or by legal action. On January 17, 1980, Mr. Stinson wrote Mr. *721 Johnston that he considered that Johnston had forfeited the lease, and enclosed a release for Johnston to sign and return. This release was never signed.

COMPARISON OF THE LEASES
Both leases between the Stinsons and Johnston contained positive prohibitions against subletting or assigning without the written consent of the lessor. Both Johnston leases restrict his farming operations to raising and harvesting soybeans.
The Williamson lease contains the following provision about crops the lessee could raise:
THE PURPOSE of this lease is for the planting, raising and harvesting soybeans, however, Lessee may double crop in any crop of his choice but rental will continue on the basis set out above. (Emphasis added)
As to hunting, the December 27, 1977, Johnston lease states the following:
All hunting and/or fishing rights and privileges are hereby reserved by Lessors and excepted from this lease, with the understanding that Lessee and members of his immediate family may enjoy these rights so long as they follow rules and regulations set out by the Mississippi Game and Fish Commission.
The Farmers Home Administration lease between the Stinsons and Johnston states the following about hunting and fishing:
1. Reservation of land and buildings.  The landlord reserves the right to use the following land and buildings for the following purposes:
... All hunting & fishing rights ...
The Williamson lease states the following relative to hunting and fishing rights:
All hunting rights and privileges are hereby granted unto Lessee, with the understanding that Lessors, Glen A. Stinson and Glen Ellis Stinson together with two friends reserve hunting rights and privileges for themselves. Lessee to enjoy said rights so long as he follows rules and regulations set out by the Mississippi Game and Fish Commission.
The Farmers Home Administration lease with Johnston provides for a $20,000 yearly cash rental to be paid by November 15 of each year. The Williamson lease provides for an annual cash rental of $32,500 for the first three years, which would cover the three years remaining on the Johnston lease, and $40,000 annual rental for the two years following. Williamson was also given the option to renew the lease for an additional five-year period beginning January 1, 1985, at an annual cash rental of $45,000.
At trial no proof was offered by Johnston as to how the Stinsons' letter of December 4, 1979, had injured him, or caused him any loss of profits or other loss. One witness for the Stinsons testified that the land being cultivated by Johnston was not farmed as well as the Stinsons' farm operations.
At trial's conclusion, the chancellor ruled the Stinsons had breached their lease contract with Johnston, but that he had proved only nominal damages and would be awarded a monetary judgment and costs. The pertinent portion of the chancellor's opinion reads:
The next question is the issue of damages. The Court is of the opinion that the Complainant should be entitled to damages as against the Defendants for the breach of the lease or leases. However, the record is absent as to any proof of damages by competent evidence and with reasonable certainty. While the admission of the Williamson lease contains a declaration against interest on the part of the Defendants, there is no competent evidence to show the Court the difference of the fair market value of the Johnston lease as compared to the fair market value of the Williamson lease in the face of the variables and the differences in the leases as to (1) the right to double crop, (2) the right to extend the lease, and (3) the hunting rights granted therein. An assessment of damages on the evidence presented would be speculative and conjectural.
Johnston appealed from the decree awarding him $1.00 nominal damages. The Stinsons did not cross-appeal.

*722 LAW
It could be cogently argued that the Stinsons never breached the land lease contract. They did nothing to interfere with Johnston's possession of the land; there was no effort made to evict him by legal action or otherwise. All the Stinsons did was to write Johnston a letter notifying him they considered their contract void. He could have ignored this letter and remained in possession. They took no steps which prevented Johnston from enjoying his lease-hold possession, or any right he had under the contract. See Early v. Santa Clara Broadcasting Co., 211 Cal. App.2d 367, 27 Cal. Rptr. 212 (1963); Meinhardt v. Investment Builders Properties Co., 518 P.2d 1376 (Colo.Ct.App. 1973); R.T. Clark & Co. v. Miller, 154 Miss. 233, 122 So. 475 (1929).
Counsel for the Stinsons also argue on appeal that because the security agreement pertaining to the farm equipment was specifically made an addendum to the land lease contract, and contains a provision that violation of its terms also constitutes a breach of the land lease contract, and further since we have held in Johnston v. Stinson, supra, that the security agreement was breached by Johnston, under the law of the case, this amounts to an adjudication of the breach of the land lease by Johnston.
Unfortunately for the Stinsons, the chancellor ruled they, not Johnston, had breached the land lease contract, and there being no cross-appeal, this ruling is binding upon us.
What then, was the proper measure of damages in this case?
If the Johnston lease had been assignable, and had some market value in excess of the amount he was obligated to pay as annual rent, this would have been a valid measure of determining Johnston's damages for its breach. See: Maddox v. Yocum, 114 Ind. App. 390, 52 N.E.2d 636 (1944); Mississippi State Highway Commission v. Central Land and Rental Corp., 239 So.2d 335 (1970) at 337; Lee v. Indian Creek Drainage District Number One, 246 Miss. 254, 148 So.2d 663, at 667 (1963); Richardson v. Callihan, 73 Miss. 4, at 6, 19 So. 95 (1895); Huiest v. Marx, 67 Mo. App. 418 (1896); 52 C.J.S. Landlord and Tenant § 461(4), at 342 (1968).
Neither Johnston lease was assignable. The Johnston lease had no market or "rental" value whatever, since he could neither assign nor sublet either. Only he could farm the land, and this was restricted to soybeans. The only person in the world for whom this lease had any value was Johnston himself. No one else could farm the land. The value to him was what he could earn, if anything, farming the land for soybeans. The actual loss to him for any breach, if anything, was for improvements he had made upon the land in expectation of completing the lease, removal of machinery, equipment, and personal property. Since neither lease could be assigned nor sublet, neither had any rental value. See: Russell v. Texas Company, 238 F.2d 636 (9th Cir.1956), at 643; B.H. Levy Bro. & Co. v. Allen, 53 Ga. App. 246, 185 S.E. 369 (1936).
The proper elements of damage in this case, therefore, were restricted to the loss of profits Johnston could reasonably have expected to earn farming the land for soybeans the remaining three years, and actual loss, if any, occasioned by being forced to move prior to the termination of the lease period. Mississippi Power & Light Co. v. Pitts, 181 Miss. 344, 179 So. 363 (1938); Montgomery Ward & Co. v. Hutchinson, 173 Miss. 701, 159 So. 862 (1935); 52 C.J.S. Landlord and Tenant § 461(4), p. 342 (1968); 25 C.J.S. Damages §§ 26, 28 (1966); 5 Corbin on Contracts §§ 1020-1022 (1964).
Johnston abandoned any effort to prove damages by loss of profits, however, and it is not difficult to surmise the reason. The first two years of his lease he had sustained heavy losses.
At the beginning of the trial, counsel for Johnston informed the court that Johnston would make no claim for damages except rental value for the unexpired lease.
I fully concur with the majority that parties are bound by their stipulations. The majority concludes, however, that counsel for the Stinsons stipulated market value of *723 the lease was the proper manner of proving damages in this case, and here we disagree. In my view, the Stinsons only agreed that Johnston "would proceed" on this theory of damages. I discern no concession on the part of Stinsons' counsel that this was a proper measure of damages in this case.
As set out in the majority opinion, the record reveals first a Court inquiry:
"... Mr. Johnston says that the only issue in this case is the fair market value of the lease for the balance of the term ..."
To which Johnston's counsel responded:
"... if Stinson terminated the lease, then he (Johnston) is entitled to a fair market value of the lease for the remaining three years." To which the Chancellor affirmed, "For the remaining period of the term, right."
Then, Stinsons' counsel made a stipulation concerning several facets of the case, but concluded on the theory upon which Johnston would proceed. This stipulation agreed that Johnston would proceed not on loss of profits, but in the difference between the fair market value of the lease:
(1) Between the Stinsons and whoever they either leased or could have leased the property to, and
(2) The rent Johnston was paying.
Where is there anything in this stipulation whereby counsel for the Stinsons agreed this was the proper measure of damages?
Even if we were to concede, however, for purposes of this case, that the parties stipulated the market or rental value of this unexpired lease was the proper measure of damages, in my view Johnston still failed to prove with any reasonable certainty the rental value of the unexpired term of his lease.
The rental value of his lease was what some person would have been willing to pay to farm the Stinson land for soybeans under a lease with the same terms and conditions as Johnston's lease.
Neither party, not a single witness, offered any proof as to the rental value of this land for soybeans under Johnston's lease.
Instead, a lease to a third party, containing substantially different terms and conditions, was offered into evidence, and it was upon this piece of paper that Johnston asked the chancellor to determine the value of his, Johnston's lease. The chancellor quite properly rejected this. He would have had to pull a figure out of thin air. There could very well have been terms in the Williamson lease which induced that lessee to obligate himself to pay a greater annual rent. For example, he had an option to renew, and he was not restricted to raising soybeans.
The chancellor refused to guess, and was correct, in my view. The majority holds the chancellor was manifestly wrong, and that Johnston made some sort of prima facie case by introducing the Williamson lease of the rental value of the Johnston lease. I do not believe we can improve upon the ruling the chancellor made.
I would affirm the case.
Since the majority has concluded the case must be reversed and remanded, I would at least require that upon remand Johnston be required to prove damages by a proper measure of damages, and not a non-existent "rental value".
NOTES
[1] The terms of both leases are ambiguous, in that while each lease states it is for a five-year period, both also have an effective beginning date of January 1, 1978, and termination date of December 31, 1983, a period of six years. In all pleadings and throughout the trial, however, all parties recognized this is a five-year lease, and we will honor their mutual understanding.
[2] This lease was expressly made contingent upon the termination of the lease entered into between the Stinsons and Johnston, providing that if that lease "is not terminated then this lease shall be void and of no effect."
[3] This third cause of action is not involved in this case, or in Johnston v. Stinson, heretofore decided in this Court, and discussed infra.