¶ 1. The initial opinion in this case that remanded for specific findings is withdrawn and the following is substituted. The Chancery Court of Rankin County awarded primary custody of two children to their father, Kenneth Limbaugh. The children's mother, Beverly Limbaugh, appealed alleging that the chancellor failed to apply the proper factors for determining child custody and consequently reached the wrong determination. A remand was ordered by this court on June 22, 1999, for the chancellor to place on the record his reasons for awarding custody as he did. The chancellor promptly responded. After a review of those findings and the original briefs, which the parties advised us adequately set out their positions even after the remand, we affirm on all issues.
 FACTS ¶ 2. On September 16, 1997, Kenneth and Beverly Limbaugh were granted a divorce based on irreconcilable differences. Legal custody of the couple's two children was to be joint, but "the physical care, custody, and control of the children" would be with the father. Child custody is the only issue involved in this appeal.
 ¶ 3. Testimony in this case revealed that the couple had been married approximately ten years at the time of their separation. Although Mrs. Limbaugh admitted that Mr. Limbaugh was an excellent father, she felt the children would be better off with her. The father argued that his former wife was not "in a position to take care of *Page 1246 
the children." Motherhood, he said, did not "fit her lifestyle."
 ¶ 4. It was revealed in the testimony that Beverly Limbaugh had stayed overnight with the children at the house of a man with whom she was romantically involved, James Reames. Mr. Reames had been a long time family friend and Kenneth Limbaugh's best friend. Bringing the children over and staying the night had been a fairly frequent occurrence when the Limbaughs were still together.
 ¶ 5. Both Beverly Limbaugh and James Reames denied having had any sexual relationship while the children were present, though they admitted she had stayed over with her children. The two claimed they had stayed in separate rooms when visiting. Reames's mother, who lived with her son, answered, "No, sir," when asked if her son and Beverly Limbaugh had "shared the same bedroom" while the children were at the house.
 ¶ 6. Kenneth Limbaugh admitted at trial having twice had sexual relations in the last year with someone other than his wife, but denied that the children had been in the house, nor had he ever had either woman stay the night while the children were present.
 DISCUSSION
I. Whether the court considered the best interest of the childrenin awarding custody and whether the chancellor's ruling wasagainst the overwhelming weight of the evidence.
 ¶ 7. There are two facets of this issue, 1) the specific findings regarding the basis for awarding custody, and 2) the finding by the chancellor that the best interests of the children were served by placing them with the father.
 ¶ 8. It has been said many times that the principal consideration in child custody cases is the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983). That case identified the factors that are to be considered. Id. The chancellor initially assigned custody without making a reference to any of the factors with the possible exception of the parents' morality. After remand, the chancellor provided detailed finding of facts in accordance with Albright.
 ¶ 9. In reviewing a child custody decision, we will affirm unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Wright v. Stanley, 700 So.2d 274,280 (Miss. 1997). Error arises if the chancellor's decision is not supported by substantial evidence in the record. Smith v. Jones,654 So.2d 480, 485 (Miss. 1995).
 ¶ 10. The Albright factors that should be considered by chancellors in reaching decisions regarding custody are these:
 The age of the child is . . . but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).
 ¶ 11. There was significant testimony structured around these factors. The chancellor noted that the children are 9 and 5 years old and both are female, which does not prohibit placing the children in the custody of either parent. Although *Page 1247 
the chancellor did not comment on the health of the children, he stated that both parents are registered nurses and that the ability to care for the children is equal.
 ¶ 12. While the evidence indicated that both parents participated in the lives of the children, it is evident that Kenneth was the parent that provided the greatest continuity of care. Kenneth was the parent who was able to take the responsibility of preparing the children for school in the morning, even walking the older child to her classroom when he could have "dropped her at the front" of the school. Kenneth was able to organize his work schedule to perform these duties. Kenneth was the parent notified by the school when one of the children was sick or needed attention. There also was evidence of considerable bonding between Kenneth and the older child.
 ¶ 13. The chancellor determined that while both parents are equally able to care for the children, Kenneth was more willing to accept these duties and obligations than Beverly. This opinion was in part based on testimony that Beverly once brought the children back to Kenneth four hours early so that she could go on a trip to New Orleans with her boyfriend. The chancellor noted that the employment of the parents was similar in working conditions and employment demands. The difference, however, was that Kenneth was able to choose the hours that he worked, and he often chose hours that allowed him to spend time with his children. Beverly, on the other hand, had an inflexible schedule which, when she kept the children, required her to wake the children at 5:30 a.m. and take them to Kenneth's house for transporting later to school and day care.
 ¶ 14. The chancellor found that both parents were physically and mentally in good health and that they were of comparable age. The children performed well at their present schools and were well accepted by the teachers and their friends in the community. The chancellor concluded that the home life of the children was better with the father, as he remained in the marital domicile. That left the children in familiar surroundings. That residence would be comfortable and avoid the trauma of moving them to Beverly's new residence with a new husband. The chancellor made a detailed analysis of the moral fitness of the parents, finding that Kenneth's lifestyle and morals are more conducive to the raising of two small children than Beverly's.
 ¶ 15. After applying all of the Albright factors, the chancellor held that Kenneth better exemplified the characteristics of a primary care-giver than did Beverly. Primary physical custody was therefore awarded to Kenneth.
 ¶ 16. This conclusion is supported by substantial evidence contained in the record. We find no abuse of discretion nor application of an erroneous legal standard. The chancellor's decision complies with Albright.
II. Whether the court erred in allowing hearsay testimony fromKenneth Limbaugh
 ¶ 17. Although Beverly Limbaugh and Jim Reames both admitted staying at Reames's home, they denied having been in the same bedroom or having sexual relations while the children were present. However, Kenneth Limbaugh quoted his daughter as saying that Mrs. Limbaugh and Mr. Reames had slept together, once in Mrs. Limbaugh's bed and once in Mr. Reames's bed. Mr. Limbaugh's counsel argued at trial that the statements were not being offered to demonstrate the truth of the assertion, but only to show that the statements had been said.
 ¶ 18. It is true "that if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay." Gayten v. State, 595 So.2d 409, 414 (Miss. 1992). However, we do not find that the daughter's making the statement is relevant independently of the truth of the facts asserted in the statement. The chancellor apparently did not *Page 1248 
consider this statement in awarding custody to Kenneth. Rather, he looked to the weight of other evidence. Because this statement was not a determining factor in the custody decision, we find that the error in admitting it was harmless.
III. Whether the chancellor erred in prohibiting either parentfrom having an overnight guest while the children are present.
 ¶ 19. Both briefs acknowledge that Beverly Limbaugh is now married to Jim Reames. Though statements in briefs are not evidence, the fact that the parties each make the assertion would make the fact conceded. If the marriage has occurred, then the issue of the chancellor's restriction on overnight visitation is moot. Therefore, there is no reason to address the legal issue as neither party addressed the issue in its response to us after the remand order.
 ¶ 20. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED.COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, PAYNE, ANDTHOMAS, JJ., CONCUR.
DIAZ AND MOORE, JJ., NOT PARTICIPATING.