766 So.2d 68 (2000)
Carol Ann DOUGLAS, Appellant,
v.
John William DOUGLAS, Appellee.
No. 1999-CA-00961-COA.
Court of Appeals of Mississippi.
August 15, 2000.
*69 Reilly Morse, Gulfport, Attorney for Appellant.
Edward F. Donovan, Biloxi, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court challenging the judgment of the Harrison County Chancery Court denying a contempt citation for failure to comply with the terms of a property settlement agreement, a petition to modify a child support award, and a denial of an award of attorney's fees for contempt proceedings. Aggrieved, Carol perfected this appeal raising the following issues
I. WHETHER THE CHANCELLOR ERRED IN NOT AWARDING CAROL AN INCREASE IN CHILD SUPPORT BASED ON PROOF OF A MATERIAL INCREASE IN THE NEEDS OF THE CHILDREN.
II. WHETHER THE CHANCELLOR ERRED IN HALVING THE CHILD SUPPORT PAYMENTS DUE CAROL ON THE CHILDREN ENTERING COLLEGE.
III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD CAROL ATTORNEY'S FEES FOR THIS CONTEMPT PROCEEDING.
After reviewing the record and applicable precedents, we find no error and affirm the chancellor's decision.

FACTS
¶ 2. Carol, a part-time bookkeeper and owner of rental property, and John, a physician, were married in 1974. The union, dissolved in 1992, produced two children, both minors in 1992. According to the parties' respective financial declarations, Carol's net worth is approximately 1.4 million dollars, and John's net worth is approximately 3 million dollars. The couple had a very detailed child custody and property division agreement which provided that John would pay Carol $1,500 per month in child support on each child ($3,000 total) as well as a share of uncovered medical expenses.
¶ 3. In 1998, Carol filed a motion for contempt for John's failure to pay his part of incurred medical expenses, provide life insurance coverage, and maintain an education *70 trust for the younger child's benefit. Further, Carol sought an increase in child support based on material changes in the needs of the children compared to the time of the agreement.
¶ 4. The chancellor denied Carol's request for contempt because John cured the basis for the citations of contempt by the time of the hearing. Since there was no citation of contempt, the chancellor awarded Carol no attorney's fees relating to her prosecution of the contempt. Further, the chancellor, without apparent request from John, ordered that the child support payments to Carol be reduced by fifty percent when either minor child entered college. Carol objects to this move claiming that John did not request such relief. The chancellor also found that there had not been a material change in circumstances sufficient to warrant an increase in child support to Carol.
¶ 5. John maintains that the chancellor reached the right result, even if he erred in finding that no material change in circumstance had occurred, given his and Carol's financial conditions and the boys' legitimate needs.

STANDARD OF REVIEW
¶ 6. This Court's scope of review in domestic relations is strictly limited. We will not disturb the findings of a chancellor unless we find an abuse of discretion, an erroneous application of the law, or a manifest error. Andrews v. Williams, 723 So.2d 1175 (¶ 7) (Miss.Ct.App.1998) (other citations omitted). If we find substantial evidence in the record to support the chancellor's findings, we will not reverse. Wilbourne v. Wilbourne, 748 So.2d 184 (¶ 3) (Miss.Ct.App.1999). However, if we find error, we will not hesitate to reverse. Estate of Hunter v. Hunter, 736 So.2d 440 (¶ 9) (Miss.Ct.App.1999) (citing Glass v. Glass, 726 So.2d 1281 (¶ 11) (Miss.Ct.App. 1998)).

ANALYSIS AND DISCUSSION

I. WHETHER THE CHANCELLOR ERRED IN NOT AWARDING CAROL AN INCREASE IN CHILD SUPPORT BASED ON PROOF OF A MATERIAL INCREASE IN THE NEEDS OF THE CHILDREN.
¶ 7. Carol's first assignment of error alleges that the chancellor erred in failing to grant her request for an increase in child support. As noted, the parties agreed that John would pay Carol $1,500 per month in child support on each child for a total of $3,000 per month. In this proceeding, Carol sought an increase in child support of $750 to $1,000 per month per child, which would raise the support level to $4,500 or $5,000 per month.
¶ 8. In order to justify a modification of the amount of child support payments, the party seeking the modification must demonstrate a material change in the financial circumstances of an interested party arising after the entry of the original agreement. Havens v. Broocks, 728 So.2d 580 (¶ 8) (Miss.Ct.App.1998) (citing McEachern v. McEachern, 605 So.2d 809, 815 (Miss.1992)). Further, the material change in financial circumstances must not have been readily foreseeable at the time of the entry of the first decree. Wallace v. Bond, 745 So.2d 844 (¶ 23) (Miss.1999) (citing Morris v. Morris, 541 So.2d 1040, 1042 (Miss.1989)).
¶ 9. In this case, Carol testified that since the divorce, the expenses for the children have increased with more consumption of food, clothing, transportation expenses, and educational expenses. John's position was that he paid more than was necessary in the children's early years and that the reason he agreed to do this was to compensate for the children's future increase in expenses. The chancellor found that Carol failed to prove a material change in John's circumstances sufficient to justify an increase in child support payments, noting that "[w]hile John experienced substantial increases for several *71 years after the divorce, it appears now, based on his 1998 W-2 form, that his 1998 adjusted gross income will be around $382,000.00." However, the parties stipulated, in Exhibit D-8, to John's total after tax income amounts for each year from 1992-1998, showing his total, after tax income for 1992 to be $240,096 and his actual total after tax income for 1998 to be $275,508, an approximate 14.7 % increase in his total after tax income between 1992 and 1998. Interim increases reflect fluctuating income levels each year of the period, ranging from an approximate decrease of fifty percent in 1993 and an increase of approximately fifty two percent in 1997. "A stipulated fact is one which both parties agree is true. Where the parties file and gain court approval of a formal stipulation agreement ... the factual issues addressed in the agreement are forever settled and excluded from controversy. Neither party can later change positions." Wilbourn v. Hobson, 608 So.2d 1187, 1189 (Miss.1992) (citing Johnston v. Stinson, 434 So.2d 715 (Miss.1983); Vance v. Vance, 216 Miss. 816, 63 So.2d 214 (1953); Stone v. Reichman-Crosby Co., 43 So.2d 184 (Miss.1949)). Furthermore, proper factual stipulations fix boundaries beyond which this Court nor the trial court may venture. Id. Thus, the chancellor erred by not adhering to the stipulated income levels in reaching his findings. However, we find such error was harmless, for if the chancellor did not find a material change of circumstances between John's 1992 income and the amount indicated on the W-2 as his 1998 gross income, similarly he certainly would not have found a material change in circumstances where John's income increased comparatively less for the same period based on the stipulation.
¶ 10. We find that there was substantial evidence in the record to support the chancellor's findings. Given our limited standard of review, we affirm the chancellor's denial of an increase in child support.

II. WHETHER THE CHANCELLOR ERRED IN HALVING THE CHILD SUPPORT PAYMENTS DUE CAROL ON THE CHILDREN ENTERING COLLEGE.
¶ 11. Carol next complains that the chancellor erred in reducing her future child support payments based on each of the children's entrance into college. The couple's original property settlement agreement provided for a modification of the child support arrangement on a child's entrance into college. Carol sought, in her pleadings, a declaration that the child support would not cease or be reduced on the children's reaching age eighteen. John maintains that the chancellor properly exercised his discretion in recognizing that the needs of the children upon entering college will fall substantially because of the monies that had been previously reserved for college expenses.
¶ 12. We agree with John. The chancellor was asked to rule on the child support due the children upon their entrance in college. While Carol did not receive the relief she sought, she did place the issue before the chancellor. Stinson v. Stinson, 738 So.2d 1259 (¶ 20) (Miss.Ct.App.1999) (citing Brennan v. Brennan, 638 So.2d 1320, 1325 (Miss.1994)). The property settlement agreement provided for a modification in the child support arrangement when the children enter college. Carol sought to modify that provision of the property settlement agreement, and the chancellor declined to grant her the relief she sought. We find nothing improper with the chancellor's treatment of this issue.

III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD CAROL ATTORNEY'S FEES FOR THIS CONTEMPT PROCEEDING.
¶ 13. Carol next suggests error in the chancellor's failure to award her attorney's fees for her having to pursue contempt proceedings against John. First, Carol maintains that for three years John failed to pay his portion of a $1,900 orthodontic bill; however, two weeks prior to *72 the instant hearing, John paid his portion of this expense. John maintained that he and Carol agreed to allow Carol to claim the children as dependents for tax purposes in lieu of his paying his part of the orthodontic expenses. Carol maintained that she agreed to such an arrangement on one bill, not in contention here, but did not consent to such a barter for this particular bill. The chancellor found that since the bill was paid prior to the hearing, then the issue was not of concern to the substance of this judgment. As did the chancellor, we find no contemptuous action here. Second, Carol charged John with failing to name her as the beneficiary of a $200,000 life insurance policy for the minor children's benefit in the event of John's untimely death. John maintained that he directed his insurance agent, a mutual friend of John's and Carol's, to get in touch with Carol and make the change, and for whatever reason the change was not made in a timely fashion. The chancellor found that while John was tardy in complying with this provision of the property settlement agreement, he had not refused to comply and had done so at the time of the hearing. As such, the chancellor adjudged the issue of the life insurance to be moot. Third, Carol maintained that John had failed to establish a Clifford Trust for the youngest child's future educational expenses. However, such a trust was not an option at the time John and Carol entered their property settlement agreement in 1992 due to changes in the federal internal revenue code. Thus, the chancellor ordered that a $50,000 restricted investment management account be established for the youngest child's educational expenses. The chancellor did not make any findings regarding Carol's allegation of contempt against John on this issue.
¶ 14. It is axiomatic in Mississippi that an award of attorney's fees is largely left to the sound discretion of our learned chancellors. Gray v. Gray, 745 So.2d 234 (¶ 26) (Miss.1999). However, where a divorced party is bound to comply with a previously issued valid court decree, "[t]he dignity and strength of the Court through the enforcement of its decrees require nothing less" than full and complete compliance. Pearson v. Hatcher, 279 So.2d 654, 656 (Miss.1973). Thus, where a party who is entitled to the benefits of a previous judicial decree is forced to initiate further proceedings to gain compliance with the previous order of the court by the contumacious party, a failure to award attorney's fees serves to diminish the force of the decree if the entitled party is not in a position to obtain counsel. Id. Furthermore, where the party responsible for compliance with the previous decree forces new litigation to be filed in order to gain the party's compliance, an award of attorney's fees is appropriate. Johnson v. Pogue, 716 So.2d 1123 (¶ 44) (Miss.Ct.App. 1998) (denying an award of attorney's fees but outlining both the general rule regarding an award of attorney's fees and the law regarding an award of attorney's fees in contempt actions), in support of an award of attorney's fees in a contempt action to the party gaining compliance and Mizell v. Mizell, 708 So.2d 55, 65 (Miss.1998), in support of an award of attorney's fees in a contempt action even though an actual citation of contempt was not entered by the chancellor)).
¶ 15. Carol alleged that John was in wilful contempt at the time Carol filed this petition for relief. After hearing all the evidence, the chancellor did not find John to be in contempt of court because John's non-compliance with the property settlement agreement had been cured at the time of the hearing. John's failure to comply with the terms of the agreement was not due to a disregard of the chancellor's previous order obligating him to do so. This ruling is limited to the facts and circumstances of this case. We should not be heard to say that a party can clearly disregard a valid court order until contempt proceedings are filed against the offending party and just prior to trial gain exoneration by full compliance and escape *73 any finding of contempt and charge of appropriate attorney's fees. Attorneys and parties should not lull themselves into the false sense of security that because a divorced party who stands in contempt of a valid decree cures the contumacious conduct after an attorney is hired and a petition of contempt is filed but prior to the hearing, is insulated from an award of attorney's fees. John's failure to adhere to the terms of the 1992 property settlement agreement resulted in Carol's having to seek legal counsel and file pleadings in order to gain John's compliance. However, adhering to the substantial evidence of review, there was such evidence sufficient to demonstrate John's attempts, though ineffectual, to comply with the chancellor's previous orders. Thus, the chancellor was correct ion his decision to deny Carol attorney's fees.
¶ 16. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND THOMAS, JJ., CONCUR.