832 So.2d 1247 (2002)
Cindy K. BROOME, Appellant,
v.
Paul A. BROOME, Appellee.
No. 2001-CA-01014-COA.
Court of Appeals of Mississippi.
December 17, 2002.
*1250 Barbara Elizabeth Harvey, Gautier, attorney for appellant.
Jack C. Pickett, Jackson, attorney for appellee.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
IRVING, J., for the court.
¶ 1. Cindy Broome filed a complaint for contempt and modification against her former spouse, Paul Broome, seeking to have him held in contempt for failure to pay $1,375 in child support, $550 of which was alleged to be due for arrearage, $240 in medical expenses, and $1,196 in charges and fees which were assessed as a result of twenty-three of Paul's child support and medical reimbursement checks being returned because of insufficient funds. Cindy also sought attorney's fees and a modification of the provisions of the final judgment of divorce concerning Paul's obligations for reimbursement of medical expenses.
¶ 2. Paul responded and admitted that certain sums were owed, including some payments for child support arrearage. Paul further admitted that twenty-three checks had been returned to Cindy. However, he alleged that the return of the checks was the result of Cindy's own conduct and that Cindy had refused to cooperate in his efforts to pay for the returned checks. He also alleged that Cindy had refused to accept payment for the amounts alleged to be due and owing and that she had acted with the deliberate design to harass him, both financially and emotionally. Additionally, Paul filed a counterclaim seeking to have Cindy sanctioned pursuant to Rule 11 of the Mississippi Rules of Civil Procedure. He averred that Cindy's conduct in holding twenty-nine checks, dating back to March 2000, and then depositing them between September 5 and 12 of 2000, was designed to harass him. He also sought to have Cindy held in contempt for violating a previous court order providing that the parties were not to harass or disrupt the peaceful enjoyment of life of one another.
¶ 3. The trial judge rendered a judgment denying Cindy's request for relief and granting Paul's counterclaim. Cindy has appealed and urges that the trial judge erred when he refused to hold Paul in contempt, denied her claim for insufficient funds fees, denied her request that Paul be solely responsible for the initial dental bill of $3,286 for braces for the minor child, *1251 denied her request for attorney's fees and for statutory fees under section 11-7-12 of the Mississippi Code of 1972, as amended, held her in contempt, and sanctioned her $700.
¶ 4. We do not find any reversible error; therefore, we affirm the trial judge.

FACTS
¶ 5. Paul and Cindy Broome were married on September 15, 1984. The marriage produced one son, Shaun Anthony Broome. On November 17, 1994, the parties were granted a divorce on the grounds of irreconcilable differences by the Chancery Court of Jackson County, Mississippi. The court's final decree did not, however, end the conflict or litigation between the parties. Since October 7, 1996, the chancery court has addressed five complaints of contempt filed by Cindy against Paul. The last complaint was filed on December 4, 2000, with the trial being conducted on February 15, 2001, and May 10, 2001.
¶ 6. Additional facts will be related during a discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
Standard of Review
¶ 7. A limited standard of review is employed by this Court in reviewing decisions of a chancellor. Stacy v. Ross, 798 So.2d 1275, 1278(¶ 13) (Miss.2001) (citing Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997)). Findings will not be disturbed on review unless the chancellor abused his discretion, was manifestly wrong, or made a finding which was clearly erroneous. Id. (citing Bank of Miss. v. Hollingsworth, 609 So.2d 422, 424 (Miss. 1992)). This Court reviews questions of law, however, under a de novo standard. Id. (citing Zeman v. Stanford, 789 So.2d 798, 802(¶ 12) (Miss.2001)).
Contempt Charges against Paul
¶ 8. This Court will not reverse a chancellor's finding where it is supported by substantial credible evidence. Shipley v. Ferguson, 638 So.2d 1295, 1297 (Miss. 1994). This standard of review holds true for contempt matters, too. "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994) (citing Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990)). A citation for contempt is proper only when the contemner has willfully and deliberately ignored the order or the court. Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997) (citing Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990); Cooper v. Keyes, 510 So.2d 518, 519 (Miss.1987)). Clear and convincing proof is required for a finding of contempt by the chancellor. Setser v. Piazza, 644 So.2d 1211, 1216 (Miss.1994) (citing Cumberland v. Cumberland, 564 So.2d 839, 845 (1990)).
¶ 9. Cindy argues that, on the first trial, Paul owed child support, medical expenses, and arrearage from previous judgments. She points out that Paul admitted he owed said obligations. Furthermore, Cindy proclaims that Paul's payment of arrearage after the first day of trial is convincing proof of his contempt.
¶ 10. At least four things are exceedingly clear and undisputed from the evidence adduced at trial. First, when Cindy filed her last complaint for contempt, Paul *1252 was in arrears in both current and past due child support. Second, between September 5 and 12, 2001, Cindy presented to Paul's bank for payment a total of twentynine checks which Paul had given her for current and past due child support and medical expenses. Some of these checks dated back to March 2000. Third, the bank honored six of these checks, but twenty-three of them were not paid due to insufficient funds in Paul's account. Fourth, sometime between the first day of the trial in February and the last day of the trial in May, Paul paid all of the checks that had not been paid by the bank.
¶ 11. The reason for the delay in presenting the checks for payment is in sharp dispute. Cindy testified that she was asked by Paul to hold the checks. As might be expected, Paul denies that he asked that the checks be held, explaining that he never asked that a check be held for more than two days. Also, it is unclear whether the checks would have been paid if they had been timely presented because no evidence was presented as to the status of Paul's account at the time each check was tendered to Cindy.
¶ 12. The trial judge determined that Paul was not in contempt because "Mrs. Broome admitted that all of the checks in question had been paid at the time of the hearing." The trial judge also concluded that "because Mrs. Broome's testimony was contradictory regarding whether or not she actually deposited, cashed or only had the checks in question stamped by her bank as being bad for `insufficient funds', she is not entitled to any statutory fees for the checks in question."
¶ 13. We do not agree with the trial judge that Paul should not be held in contempt simply because he had paid all of the child support arrearage at the time of the hearing. We first point out that Cindy's testimony was that all of the arrearage had been paid by the time of the second day of the hearing in May, not by the time of the first day of the hearing which occurred in February. Even if the arrearage had been paid by the first day of the hearing, that would still be approximately five months after Paul was aware that the checks had been dishonored. The record does not indicate how many checks, if any, were paid by Paul between September 12, 2000, and the first day of the hearing on February 15, 2001. Although we do not agree that Paul's action in bringing his payments current by the time of the second day of the hearing should insulate him from contempt, we nevertheless affirm the trial judge's refusal to hold Paul in contempt. We do so because the burden was on Cindy to prove by clear and convincing evidence that Paul was in contempt for failure to pay child support as ordered. As previously mentioned, Cindy failed to present clear and convincing evidence that when Paul tendered the checks to her, he did not have sufficient money in his account to cover them. We are mindful of Cindy's testimony that Paul asked her to hold some of the checks. However, it would have been a simple matter to subpoena Paul's bank records for the periods in question to ascertain whether sufficient money was available to cover the tendered checks.
Contempt Charges against Cindy
¶ 14. Cindy argues that the chancellor's ruling was arbitrary and capricious and against the overwhelming weight of the evidence when he found that she was in willful contempt of the court's August 25, 1995 order. According to Cindy, both she and her son, Shaun, gave clear and *1253 extensive testimony regarding the reason for holding the twenty-nine checks and that the reason was because Paul asked her to hold them, promising that he would make the checks good. Cindy contends that, notwithstanding Paul's promise, she could never talk to him or get his attention until she presented the twenty-nine checks to his bank. She further explains that Paul's attorney contacted her about redeeming the twenty-three checks that were not paid by Paul's bank due to insufficient funds and that she provided Paul's attorney with a copy of all of the checks. Yet, she did not receive any funds for two months. According to Cindy, it was Paul's action in this regard that forced her to file the contempt action against Paul.
¶ 15. The chancellor saw it differently. In his findings, the chancellor explained:
Even considering the fact that the 29 child support and arrearage checks Mrs. Broome cashed between September 5th and 12th all should have been good if Mr. Broome had properly balanced his checking account, it is evident that Mrs. Broome's intent was to harass Mr. Broome and yet file another complaint against him. If not, she could have simply allowed him to pay the checks, something the evidence shows he made every effort to do. In addition to holding the checks in the first place, some as early as March of 2000, and attempting to negotiate 29 of them the week of Mr. Broome's birthday, perhaps the most illustrative evidence of her underlying motivation was the fact that she never told her attorney that Mr. Broome had tried to pay the checks and that she had been in contact with and had received several pieces of correspondence from Mr. Broome's attorney trying to pay them prior to instructing her attorney to file suit on the checks. Thus, to this Court, Mrs. Broome's motivation was clear. She wanted to file yet another complaint causing Mr. Broome yet more financial problems and emotional distress.
¶ 16. The chancellor believed, and found, that Cindy's actions were designed to harass Paul. Under our standard of review, we must give deference to the chancellor's findings of fact. We cannot say that there was no evidence to support the chancellor's finding or that his findings were clearly erroneous in this regard. Upon finding Cindy in willful contempt of the court's order, the chancellor was at liberty to issue appropriate sanctions against her. Under Rule 11(b) of the Mississippi Rules of Civil Procedure, the court may award reasonable expenses and attorney's fees against a party or his attorney, or both, whose pleading or motion (1) is frivolous or (2) is filed for the purpose of harassment or delay. In reviewing whether the imposition of sanctions is warranted under Rule 11, this Court uses an abuse of discretion standard. January v. Barnes, 621 So.2d 915, 921 (Miss.1992). We do not find an abuse of discretion by the chancellor and therefore affirm.
The Denial of Statutory Fees
¶ 17. Section 11-7-12 of the Mississippi Code of 1972 allows a payee or endorser to recover damages for any check made, drawn, issued, uttered, or delivered in violation of Section 97-19-55. See Miss. Code Ann. § 11-7-12 (1972). The amount of money recoverable is determined by the amount of the check. Id. In relevant part, section 97-19-55 states:
It shall be unlawful for any person with fraudulent intent:

*1254 (a) To make, draw, issue, utter or deliver any check, draft or order for the payment of money drawn on any bank, corporation, firm or person for the purpose of obtaining money, services or any article of value, or for the purpose of satisfying a preexisting debt or making a payment or payments on a past due account or accounts, knowing at the time of making, drawing, issuing, uttering or delivering said check, draft or order that the maker or drawer has not sufficient funds in or on deposit with such bank, corporation, firm or person for the payment of such check, draft or order in full, and all other checks, drafts or orders upon such funds then outstanding.
Miss.Code Ann. § 97-19-55 (Rev.2000).
¶ 18. Cindy argues that the chancellor committed reversible error by denying her statutory damages under section 11-7-12 for the twenty-three checks Paul had given her that were dishonored by the bank because of insufficient funds. She cites no authority in support of her position. She simply states, "the lower court exceeded its authority in denying its statutory mandate" and "misinterpreted the statute."
¶ 19. In this case, Cindy presented no evidence that Paul issued the checks in question with fraudulent intent. Therefore, there was no justification for the chancellor to award any statutory damages under section 11-7-12 regarding the checks in question.
The Denial of the Request for Modification
¶ 20. In seeking a modification of child support obligations, the moving party must prove that a material change in circumstances has occurred since the entry of the decree, that such change was unforeseeable at the time of the decree, and that the change was not caused by willful or bad faith actions on the moving party's part. Magee v. Magee, 755 So.2d 1057(¶ 9) (Miss.2000) (citing Varner v. Varner, 666 So.2d 493, 497 (Miss. 1995)). A chancellor is afforded broad discretion in the area of modification of child support obligations, and this Court will reverse only when the chancellor was manifestly in error in a finding of fact or if there has been an abuse of discretion or when an erroneous legal standard was applied. Lahmann v. Hallmon, 722 So.2d 614(¶ 27) (Miss.1998) (citing McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994); Tilley v. Tilley, 610 So.2d 348, 351 (Miss. 1992); Hammett v. Woods, 602 So.2d 825, 828 (Miss.1992)).
¶ 21. On September 22, 1999, the chancellor modified, at Cindy's request, the decree of divorce between the parties to provide that Paul would be responsible for all medical expenses incurred on behalf of Shaun until such time as either party may secure health insurance coverage on the child, at which time each party would be responsible for one-half of any such expenses not covered by such insurance. Prior to this modification, Cindy had insurance on the minor child through her employment, and Paul was responsible for paying all bills not covered by that insurance. Cindy lost her job and her insurance benefits.
¶ 22. Cindy sought a modification of the medical expense provision of the court's September 22, 1999 judgment to make Paul responsible for all of the child's medical expenses not covered by insurance. According to Cindy, the material and substantial change in circumstances warranting the modification was "that the Defendant [Paul] obtained insurance on said minor on January 5, 2001, unbeknownst to the Plaintiff."
*1255 ¶ 23. Paul obtained insurance on Shaun through his present wife's employer. Coverage under the policy became effective on January 5, 2001. Paul provided Cindy with notice of that insurance by correspondence from his attorney, dated February 16, 2001. Paul's insurance coverage did not cover orthodontic treatment.
¶ 24. On December 20, 2000, Cindy took Shaun to an orthodontist for an initial exam and paid for the exam. On February 23, 2001, Shaun received treatment for the first time, and Cindy made an initial payment of $98 towards the cost of the braces. As of that date, a balance of $3,188 remained on the bill. According to Cindy, the remaining balance had to be paid in monthly installments of $98.
¶ 25. Based on these facts, Cindy claims that the chancellor erred in holding that each party should be responsible for one-half of the costs associated with Shaun's braces. Cindy argues that since the entire cost of Shaun's braces was incurred prior to the time she learned that Paul had obtained insurance on the child, Paul should be responsible for all the costs.
¶ 26. Cindy presented no evidence to the court showing that a material change in circumstances had occurred justifying the court's modification of the prior judgment. The court noted that the only change in circumstances was that Paul obtained insurance on Shaun. This is hardly a change in circumstances that was not contemplated by the September 22, 1999 modification.
¶ 27. Cindy's contention that the orthodontic bill in question was incurred prior to Paul's obtaining insurance is unsupported by the evidence. The only orthodontic expense incurred prior to January 5, 2001, was the bill for the initial exam. According to the statement presented by Cindy, no treatment was performed until February 23, 2001. Therefore, both the effective date of the insurance for Shaun and Cindy's notification of Shaun's coverage preceded any costs incurred for Shaun's dental treatment.
¶ 28. The chancellor denied the modification and determined that the parties should share equally in paying for the medical expenses associated with Shaun's braces, as provided in the court's September 22, 1999 judgment. The court also noted that Shaun's expenses were medically necessary rather than cosmetic. See Smith v. Smith, 405 So.2d 896 (Miss.1981). The chancellor took note of the fact that Cindy was unemployed at the time of the hearing. Therefore, the chancellor required Paul to make the entire monthly payments on the orthodontic bill until Cindy could find employment. The chancellor also ordered Paul to reimburse Cindy for any amounts she had paid Shaun's orthodontist prior to the date Paul provided proof of insurance coverage to Cindy. To avoid overly burdening Paul financially, the court allowed Paul to deduct Cindy's one-half share of the orthodontic expense from Paul's child support payments. We find no error in the chancellor's handling of this issue.
The Denial of Attorney's Fees
¶ 29. Cindy argues that the lower court gave no reason for denying her attorney's fees. She cites one of our cases, Douglas v. Douglas, 766 So.2d 68 (Miss.Ct. App.2000), to support her contention that she is entitled to an award of attorney's fees because Paul disregarded a valid court order until contempt proceedings were filed against him. According to Cindy, Douglas supports the proposition that *1256 "those who disregard a valid court order until contempt proceedings are filed against them, and just prior to trial gain exoneration by fully complying with the court order shall not insulate themselves from any findings of contempt and charge of appropriate attorneys fees."
¶ 30. In Douglas, the plaintiff, Carol, challenged the chancellor's failure to award her attorney's fees for her pursuit of contempt charges against her ex-husband, John. Carol alleged that for three years John failed to pay his portion of a $1,900 orthodontic bill; however, two weeks prior to the contempt hearing, John paid his portion of this expense. John maintained that he and Carol agreed to allow Carol to claim the children as dependents for tax purposes in lieu of his paying his part of the orthodontic expenses. Carol maintained that she agreed to such an arrangement for another bill, not the orthodontic bill. The chancellor found that John's failure to comply with the terms of the agreement was not due to a disregard of the chancellor's previous order. He also found that since the bill was paid prior to the hearing, then the issue of contempt was not of concern to the substance of that judgment. Consequently, the chancellor denied the wife's request for attorney's fees.
¶ 31. In affirming the chancellor's findings, this Court drew a distinction between one who wilfully disregards a court's previous order and one who does not. We explained:
This ruling is limited to the facts and circumstances of this case. We should not be heard to say that a party can clearly disregard a valid court order until contempt proceedings are filed against the offending party and just prior to trial gain exoneration by full compliance and escape any finding of contempt and charge of appropriate attorney's fees.
Douglas, 766 So.2d at 73 (¶ 15).
¶ 32. Here, the trial court did not find Paul in contempt. The chancellor found that Paul's acts of noncompliance, like those of the husband in Douglas, were not willful and thus did not warrant a finding of contempt or an award of attorney's fees to Cindy. Even in the absence of a finding of contempt, attorney's fees may be awarded in the appropriate case. Mizell v. Mizell, 708 So.2d 55, 64(¶ 57) (Miss.1998). However, an award of attorney's fees in divorce cases is left to the discretion of the trial court. Gray v. Gray, 745 So.2d 234, 239(¶ 26) (Miss.1999) citing Sarver v. Sarver, 687 So.2d 749, 755 (Miss.1997) (quoting Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994)). The chancellor determined that, notwithstanding Paul's default in payment, Cindy should not be awarded attorney's fees because Cindy refused to cooperate with Paul in getting the checks paid. The chancellor found that Paul made every effort to pay the checks before Cindy filed her lawsuit. On this point, the evidence is at least conflicting. Nevertheless, the chancellor is the fact-finder, and we cannot say this finding is entirely without anchor in the evidence. Accordingly, we find no abuse of discretion here.
Entitlement of Attorney's Fees for Prosecuting Appeal
¶ 33. Cindy contends that this court should award her reasonable attorney's fees incurred in the prosecution of this appeal. This Court may award attorney's fees on appeal "in the amount of onehalf of what was awarded in the lower court." Grant v. Grant, 765 So.2d 1263, *1257 1268(¶ 19) (Miss.2000). As stated above the chancellor did not award Cindy any attorney's fees. We have found no error with the chancellor's judgment. Accordingly, we therefore find that Cindy is not entitled to any attorney's fees on this appeal.
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.