ROBERTS, J.,
for the Court:
¶ 1. The Monroe County Chancery Court granted Brian Webb and Patricia Webb a divorce based on irreconcilable differences, but they left the issue of custody for the chancery court to decide. Based on findings by the appointed guardian ad litem (GAL) and evidence presented at the custody hearing, the chancellor awarded sole legal and physical custody of the parties’ daughter, Sarah Webb, to Patricia. Feeling aggrieved, Brian now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. Brian and Patricia were married on November 11, 2001, in Monroe County, Mississippi. Shortly thereafter, Patricia gave birth to Sarah on November 30, 2001. Patricia has three other children from pri- or relationships. After Sarah’s birth, the couple experienced multiple marital disputes, which ultimately led to the couple’s separation on May 2, 2007. Patricia filed for divorce from Brian alleging the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. The chancery court entered a temporary agreed order on June 1, 2007, granting joint custody of Sarah to Patricia and Brian.
¶ 3. On February 8, 2008, Patricia and Brian both consented to an irreconcilable-differences divorce, but they left the matter of child custody for the chancery court to decide. The chancery court heard testimony from both Patricia and Brian, as well as other witnesses, over the course of several hearings. The hearings were held on the following days: May 27, 2008; September 29, 2008; July 28, 2009; August 24, 2009; and May 20, 2010.
¶ 4. At the May 27, 2008 hearing, the chancery court appointed a GAL for Sarah. On January 28, 2009, Brian filed a motion for emergency relief against Patricia because he noticed bruising on Sarah after she would return from Patricia’s home. Brian believed this bruising was caused by Trenton, Patricia’s teenage son who was living with her at the time. As a result, the chancery court entered an agreed order of emergency relief on February 19, 2009, ordering Patricia to supervise Sarah’s interactions with Trenton and to prevent any “inappropriate or potentially harmful physical contact.”
¶ 5. The chancellor granted Patricia and Brian a divorce based on irreconcilable differences, and after reviewing the hearing transcripts and the GAL’s final and supplemental reports, the chancellor accepted the GAL’s recommendation to grant Patricia sole legal and physical custody of Sarah. Brian was granted “reasonable and liberal visitation” and ordered to pay $93.80 per month in child support.
¶6. Feeling aggrieved, Brian now appeals and raises the following issues:
I. Whether the chancery court abused its discretion, was manifestly wrong, or applied an incorrect legal standard when it failed to consider certain pertinent factors pursuant to Albright.
II. Whether the chancery court committed clear error or abused its discretion by not alternatively awarding joint custody of Sarah to Brian and Patricia.
STANDARD OF REVIEW
¶ 7. We apply a narrow standard of review of a chancellor’s child-custody decision, and we give deference to the chancellor’s findings of fact in these situations as he “must determine ‘the credibility and weight of evidence.’ ” Alderson v. Alderson, 810 So.2d 627, 629 (¶ 4) (Miss.Ct. App.2002) (quoting Powell v. Ayars, 792 *936 So.2d 240, 243 (¶ 6) (Miss.2001)). Further, “[t]he chancellor’s decision must be supported by substantial evidence established by the record of the case.” Id. (citing Limbaugh v. Limbaugh, 749 So.2d 1244, 1246 (¶ 9) (Miss.Ct.App.1999)). It is well established that we may only reverse a chancellor’s findings if his decision was manifestly wrong, clearly erroneous, or he applied an incorrect legal standard. Id. (citing Limbaugh, 749 So.2d at 1246 (¶ 9)). However, questions of law receive a de novo review. Montgomery v. Montgomery, 20 So.3d 39, 42 (¶ 9) (Miss.Ct.App. 2009) (citing Broome v. Broome, 832 So.2d 1247, 1251 (¶ 7) (Miss.Ct.App.2002)).
ANALYSIS
I. Albright Factors
¶ 8. As with all child-custody cases, “the polestar consideration ... is the best interest and welfare of the child.” Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Brian argues that the chancellor erred in finding that certain Albright factors favored Patricia over him, and, as a result, the chancellor erred in awarding custody of Sarah to Patricia.
¶ 9. In Albright, the Mississippi Supreme Court outlined several factors to be considered when determining which parent should be granted custody. These factors are as follows: the age, health, and sex of the child; which parent had the continuity of care prior to separation; which parent has the better parenting skills; the employment and employment responsibilities of each parent; the physical and mental health and the age of each parent; the emotional ties between the parent and child; the moral fitness of the parent; the home, school, and community record of the child; a child over the age of twelve’s preference; the stability of the home environment and employment of each parent; and any other factors relevant to a parent-child relationship. Id.
¶ 10. In his thorough findings of facts and conclusions of law, the chancellor applied the evidence presented to each factor. He found the following factors favored Patricia: age, sex and health of the child; better parenting skills; employment and employment responsibilities of the parent; the physical and mental health and age of the parent; and the moral fitness of the parent. After a discussion of Brian’s mother’s role in Sarah’s life versus the desire to keep Sarah with her half sister, the chancellor found the last factor, any other factor relevant to the parent-child relationship, favored Patricia. The chancellor found the continuity-of-care factor weighed in Brian’s favor. As for the remaining issues, the chancellor found the emotional-ties factor and the stability-of-the-home-environment-and-employment-of-each parent factor favored neither Patricia nor Brian.
¶ 11. Keeping in mind our standard of review and the polestar consideration in child-custody cases, we begin our analysis with Brian’s argument that the chancellor erred in finding certain Albright factors in favor of Patricia. Specifically, Brian argues the chancellor erred in finding the following factors in favor of Patricia: the moral fitness of the parent; employment and employment responsibilities; the physical and mental health and age of the parent; the parenting skills of the parent; the home, school, and community record of the child; the stability of the parent’s home and employment; and any other relevant factor (i.e. separation from the half sister).
¶ 12. Brian argues the chancellor erred in relying on the evidence presented of Brian’s smoking, alcohol consumption, and drug use when finding in favor of Patricia on the moral fitness factor. Brian *937 submits that he never used any illegal drugs and had not consumed alcohol or smoked cigarettes in several years, and he never did so in front of Sarah. Brian also argues Patricia testified that she had also consumed alcohol, used illegal drugs, and had two abortions, which the chancellor failed to consider in this factor. The chancellor held the factor favored Patricia based on the cumulative effect of Brian’s prior drug use and alcohol consumption. There is evidence in the record to support the chancellor’s findings; therefore, we will not disturb his decision.
¶ 13. Brian next argues the chancellor erred in finding in favor of Patricia on the factor involving parent’s employment and employment responsibilities. Brian acknowledges in his brief that there are two lines of thought on this issue. The first line of thought, which Brian asserts the chancellor should have considered, is which parent’s work schedule allows him or her to spend the most time with the child. The second line of thought is which parent is financially able to care for the child. Brian is currently disabled, and his income is primarily from monthly social security disability checks. Brian argues he has more time to spend with Sarah as opposed to Patricia who has a spotty employment history, but when Patricia is employed she has to work long hours away from Sarah. To support his argument he cites to Owens v. Owens, 950 So.2d 202, 209-10 (¶¶ 22-26) (Miss.Ct.App.2006), contending that this Court found in favor of awarding this factor to a disabled father receiving social security disability payments over an employed mother. In Owens, we cited to numerous cases to support the line of thought that this factor should be weighed in favor of the parent who more time to spend with the child; however, we also cited to numerous cases that found this factor in favor of the employed parent. Id. at 210 (¶¶ 24-25). Ultimately, in the Owens case, we held the chancellor erred in finding the factor was neutral, and we awarded the factor to the disabled father receiving social security disability checks since he had a stable income and still had the flexibility to spend time with the child. Id. at (¶ 26). Based on our holding in Owens, we find that the chancellor erred in finding this factor in favor of Patricia. The current case is factually similar to Owens; therefore, we find this factor should have been found in favor of Brian.
¶ 14. The next factor Brian argues should have been found in his favor is the physical and mental health of the parent. The chancellor found Brian has diabetes, high blood pressure, and high cholesterol. In addition to those ailments, Brian has had several surgeries on his neck and back. As was discussed above, Brian is currently considered disabled and receives social security disability checks. As to Patricia’s health, there was testimony at the hearing that she had taken Zocor at one time and possibly has a heart murmur. Based on the evidence presented, the chancellor found in favor of Patricia. We do not dispute that Brian might be fully capable to care for Sarah in spite of his ailments; however, based on our standard of review, we find there was substantial evidence to support the chancellor’s finding that this factor favored Patricia.
¶ 15. Brian further argues the chancellor failed to consider all the evidence presented when he found the parenting-skills factor favored Patricia. Brian argues Patricia failed to address Sarah’s hygiene issues sufficiently, and Patricia had even left Sarah in Brian’s care for significant periods of time. Further, Patricia let two of her other children live with their father in California, which Brian argues was evidence of *938 poor parenting skills. The chancellor cited to numerous examples when discussing this factor. In his analysis, the chancellor expressed concern over Brian’s attitude toward Patricia, such as allegedly preventing Sarah from seeing Patricia on Mother’s Day. The chancellor also described a situation when Brian brought a live goat into the home where Sarah was living. However, the key evidence that the chancellor relied on when awarding this factor in favor of Patricia was the chancellor’s concerns about Brian’s temper. Evidence was presented that there was a large hole in the wall and that the pantry doors were torn off the wall. Brian testified that he had accidentally fell into the wall, which caused the hole, and that he tore the doors off the pantry as he was trying to stop himself from falling. The chancellor disagreed and, based on this evidence, found that Brian’s temper was a negative point in the parenting-skills factor. We cannot say that the chancellor’s decision to award this factor in favor of Patricia was manifestly wrong or clearly erroneous.
¶ 16. Brian further contends that the chancellor erred in finding that the factor of the home, school, and community record favored neither parent. Brian argues the chancellor did not consider that Patricia lacks family in the area and that Sarah would possibly have to change schools if she lived with Patricia. The chancellor found that Sarah had a good school record since she was on the honor roll, and despite moving between Brian’s and Patricia’s houses every week, Sarah still maintained these good grades. The chancellor also found Brian had diligently helped prepare Sarah for school and that Patricia had also helped as well; therefore, this factor was neutral. With our standard
of review in mind, we decline to find the chancellor erred.
¶ 17. Brian also disputes the chancellor’s finding the home-and-employment-stability factor favored neither party. The chancellor found in favor of Brian for having a more stable home since Patricia had frequently moved in the last few years. He found that Patricia had more stable employment since she was employed and that Brian was just receiving social security disability checks. Brian argues on appeal the chancellor erred by finding that Patricia’s employment was stable. Our review of the record indicates that the chancellor based his decision on substantial evidence; therefore, we will not disturb his decision.
¶ 18. Lastly, Brian argues that the chancellor focused too much on the impact of separating Sarah from her half sister, Delaney, and not enough on separating Sarah from her paternal grandmother, Jean Webb. The chancellor acknowledged that Jean’s role in Sarah’s life has been important and helpful to both parents; however, he also found that it was important not to separate Sarah from Delaney. The chancellor cited Neville v. Neville, 734 So.2d 352, 355 (¶ 10) (Miss.Ct. App.2009), to support the proposition that the presence of extended family (i.e. a grandmother) in a child’s life may help provide stability after a divorce. The chancellor also addressed Sparkman v. Sparkman, 441 So.2d 1361, 1363 (Miss. 1983) to demonstrate the desire to keep siblings together. There was testimony at trial that Sarah was close to Delaney. We agree with the chancellor’s finding that it was in Sarah’s best interest not to be separated from Delaney.
¶ 19. In conclusion, our decision that the chancellor erred by not determining that the employment-and-employment-responsibilities factor favored Brian does not *939 alter the chancellor’s judgment to grant Patricia custody of Sarah because a majority of factors still weighed in favor of Patricia and the chancellor found it was in Sarah’s best interest for Patricia to have custody. The evidence presented at the hearings was conflicting; therefore, it was the chancellor’s role to determine the credibility of the evidence presented. We find the chancellor’s decision was based on substantial evidence.
II. Joint Custody
¶ 20. Brian next argues that if he is not granted sole custody of Sarah on appeal, then this Court should find that chancellor erred in refusing to grant him and Patricia joint custody of Sarah. To support this argument, Brian cites to Crider v. Crider, 904 So.2d 142, 147-48 (¶ 13) (Miss.2005) to show that it is error for the chancellor to refuse to grant joint custody when it is in the child’s best interest to have joint custody granted. The Crider case also presents the proposition that the decision to award or not award joint custody “is for the chancellor to determine as he or she is in the best position to evaluate the credibility, sincerity, capabilities!,] and intentions of the parties.” Id. at 147.
¶ 21. We decline to find the chancellor erred in awarding sole custody to Patricia rather than joint custody; therefore, this issue is without merit.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON AND RUSSELL, JJ., CONCUR. BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT. FAIR, J., NOT PARTICIPATING.